Sandra WOODELL, Plaintiff,

v.

**UNITED WAY OF DUTCHESS COUN-TY, United Way of America and James G. Williamson, Defendants.**

No. 04CIV.0256WCC.

United States District Court,
S.D. New York.

March 2, 2005.

Thompson Wigdor & Gilly, LLP, Attorneys for Plaintiff, New York, NY, Douglas H. Wigdor, Esq., Of Counsel.

Wilson, Elser, Moskowitz, Edelman & Dickler, LLP, Attorneys for Defendants, New York, NY, Ricki E. Roer, Esq., Mary T. Hart, Esq., Of Counsel.

Seyfarth Shaw, LLP, Attorneys for Defendant, United Way of America, New York, NY, Lorie Almon, Esq., Devjani Mishra, Esq., Of Counsel.

### *OPINION AND ORDER*

WILLIAM C. CONNER, Senior District Judge.

Plaintiff Sandra Woodell brings this action against the United Way of Dutchess County (the "UWDC"), James G. Williamson (collectively, the "UWDC defendants"), and the United Way of America (the "UWA") alleging discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII") under the Pregnancy Discrimination Act amendment (the "PDA") and the New York State Human Rights Law, NEW YORK EXECUTIVE LAW §§ 290 *et seq.* (the "NYSHRL"). Plaintiff also alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* (the "FCRA").[1] The UWA and the UWDC defendants each move pursuant to FED. R. CIV. P. 56 for summary judgment. For the reasons stated hereinafter, the UWA's motion for summary judgment is granted and the UWDC defendants' motion for summary judgment is granted in part and denied in part.

### BACKGROUND

The following factual information is uncontroverted unless otherwise noted. The UWDC is a non-profit corporation located in Dutchess County, New York. (UWDC Defs. Rule 56.1 Stmt. ¶ 1.) The UWA is a non-profit corporation located in Virginia. (UWA Rule 56.1 Stmt. ¶ 2.) The UWDC is one of the UWA's many member organizations. As a member organization, the UWDC is licensed by the UWA to use the United Way logo and trade name and is obligated to pay annual dues and to comply with certain ethical and fiscal standards. (*Id.* ¶¶ 7–8.) The UWDC is inde-

---

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

pendently governed by its own Board of Governors and is operated according to its own bylaws and procedures. (*Id.* ¶¶ 9–11.) Williamson was the President and CEO of the UWDC for approximately eight years and held that position at all times relevant to this action. (UWDC Defs. Rule 56.1 Stmt. ¶ 2.) Gretchen Moore Simmons, a non-party, was the UWDC's Vice President of Resource Development at all times relevant to this action. (*Id.* ¶ 3.) Mary Kennett, also a non-party, was an employee at the UWDC at all times relevant to this action. (*Id.* ¶ 16.)

Plaintiff was employed at the UWDC as an executive assistant from April 1, 2003 through May 9, 2003. (*Id.* ¶ 4.) Plaintiff applied for the position in March of 2003 by sending a resume and letter of inquiry to the UWDC. (Woodell Dep. at 58.) Plaintiff was interviewed twice by Williamson and Simmons. (*Id.* at 59–61.) The first interview took place over the telephone and the second interview took place in person at the UWDC office. (*Id.*)

The parties dispute the substance of what was discussed during plaintiff's interviews. According to the UWDC defendants, plaintiff indicated on her resume and during her interviews that she was presently employed by a company called Ayco, but that she had been on leave to care for her ill mother since December 6, 2002. (UWDC Defs. Rule 56.1 Stmt. ¶ 6.) However, plaintiff maintains that during her first interview she was asked about her job responsibilities at Ayco but not her current employment status. (Woodell Dep. at 59–60.) Plaintiff also maintains that during her second interview, when Williams asked about her employment status at Ayco, she explained that she had taken a leave of absence to care for her mother. (*Id.* at 62.) According to plaintiff, she explained that she was unsure of her current employment status with Ayco because she had resigned via e-mail on January 24, 2003, but did not know whether Ayco had received her resignation because they had assured her that when she returned from her leave of absence her job would be available to her. (*Id.* at 71; Pl. Rule 56.1 Stmt., UWDC Defs. Stmts. Denied ¶ 5.)

According to plaintiff, she told Williamson that he could not contact her supervisor at Ayco for a reference because he was upset with her for not contacting him before she spoke to the office manager about taking a leave of absence. (Woodell Dep. at 73.) Plaintiff maintains that Williamson indicated that he understood plaintiff's predicament with Ayco and that he was not bothered by the lack of reference because he had already received her performance summaries from plaintiff's supervisor at Ayco and was very pleased with what they showed. (*Id.*; Williamson Dep. at 214–15.) Williamson then told plaintiff that they would waive the reference requirement as a condition to her employment. (Williamson Dep. at 215.) The UWDC defendants claim that during the interview process plaintiff was emphatic that the UWDC not contact her supervisor at Ayco because they had a policy of summarily terminating employees who were seeking other employment. (UWDC Defs. Rule 56.1 Stmt. ¶ 9.)

During plaintiff's second interview, Williamson advised her that the UWDC would need to obtain a report on her personal credit as part of the interview process. (Pl. Rule 56.1 Stmt. ¶ 23.) Plaintiff maintains that she requested a copy of the report at that time. (*Id.*) Plaintiff received an offer of employment at the UWDC from Williamson via telephone. (*Id.* ¶ 29.) According to plaintiff, during their phone conversation she warned Williamson that her credit report would not be good because of her divorce, but Williamson told her not to worry so long as she had never

been convicted of a felony or misdemeanor. (*Id.* ¶ 30.) Plaintiff states that during their phone conversation she requested a copy of her credit report for a second time. (*Id.* ¶ 31.) According to the UWDC defendants, Williamson "has no specific recollection" of plaintiff's request for a copy of her credit report. (Williamson Dep. at 219.)

On March 28, 2003, Williamson sent plaintiff an offer letter which stated that her offer of employment at the UWDC was "contingent upon the conduct of a formal pre-employment screening report by Fidelifacts/Metropolitan New York, Inc., and the successful completion of our calls to your references, including those at your present employer, AYCO." (UWDC Defs. Rule 56.1 Stmt. ¶ 10.) Plaintiff countersigned the offer letter attesting, "I have reviewed the terms and find them acceptable." (*Id.*) However, as noted above, despite the language contained in the letter, plaintiff maintains that the reference requirement had been waived. (Williamson Dep. at 215.) Plaintiff signed the releases required for the credit screening report on March 31, 2003. (UWDC Defs. Rule 56.1 Stmt. ¶ 12.) With respect to her employment at Ayco, plaintiff listed January 2003 as her termination date on the Fidelifacts form.[2] (Pl. Rule 56.1 Stmt., UWDC Defs. Stmts. Denied ¶ 13.)

Plaintiff began working at the UWDC on April 1, 2003. (UWDC Defs. Rule 56.1 Stmt. ¶ 14.) On her first day of work, plaintiff signed the UWDC's ethics statement, which directs employees to conduct themselves with the highest level of moral and ethical professionalism and specifically forbids "[f]ossifying reports or organizational records." (*Id.* ¶ 8; UWDC Defs. Mem. Supp. Summ. J., Ex. K.) Plaintiff

performed her job duties well and received compliments from Williamson, Simmons and others at the UWDC. (Pl. Rule 56.1 Stmt. ¶ 40.) Plaintiff did not receive any negative feedback regarding her job performance while she was employed at the UWDC. (*Id.* ¶ 43.) [3]

On or about April 8, 2003, plaintiff advised the UWDC that she was pregnant. (UWDC Defs. Rule 56.1 Stmt. ¶ 32.) In late April she advised the UWDC defendants that she would need to take some time off for tests and doctor's visits because she had been diagnosed with a high-risk pregnancy-related condition known as toxoplasmosis. (*Id.*) According to plaintiff, after she informed Williamson and Kennett that she was pregnant she felt tension from them and noticed that they were "curt with her and short with her." (Pl. Rule 56.1 Stmt. ¶ 46.) Plaintiff claims that neither Williamson nor Kennett displayed sympathy or concern for her following her toxoplasmosis diagnosis. (*Id.*) Plaintiff also claims that Williamson was particularly cold to her and that he was not as responsive or as available for meetings as he had been in the past. (*Id.*) The UWDC defendants maintain that they were continually supportive and considerate regarding plaintiff's pregnancy, that all of her requests for time off due to her pregnancy, including doctor's visits, were granted without exception and that Williamson told her to take whatever time she needed. (UWDC Defs. Rule 56.1 Stmt. ¶ 34.) Plaintiff denies that the UWDC defendants were supportive regarding her pregnancy, but admits that she was able to take time off for her doctor's appointments. (Pl. Rule 56.1 Stmt., UWDC Defs. Stmts. Denied ¶ 34.) The UWDC defendants note

---

**2.** The UWDC received the results of the Fidelifacts report after plaintiff began working at the UWDC. (UWDC Defs. Rule 56.1 Stmt. ¶ 15.)

**3.** According to the UWDC defendants, there was one incident involving plaintiff's failure to follow instructions with respect to setting up a phone system. (UWDC Defs. Rule 56.1 Stmt., Pl. Stmts. Denied ¶ 41.)

that on or about April 23, 2003, after plaintiff announced that she was pregnant, Williamson and Simmons gave her a greeting card for Administrative Assistants Day indicating that she was doing a good job and that they were pleased to have her working at the UWDC. (*Id.* ¶ 35.) However, Kennett wrote Williamson an e-mail dated April 25, 2003, wherein she stated that she felt plaintiff had been "less than forthcoming when hired about her pregnancy." (Pl. Rule 56.1 Stmt. ¶¶ 48–49; Williamson Dep. at 226–27.) Williamson admits receiving Kennett's e-mail and also that shortly thereafter they had a conversation about its contents. (Williamson Dep. at 226–27.)

In the meantime, after plaintiff had announced her pregnancy, Kennett undertook to verify plaintiff's employment history. (UWDC Defs. Rule 56.1 Stmt. ¶ 16.) On May 7, 2003, Kennett sent a fax to Ayco requesting verification of plaintiff's dates of employment. (Wigdor Aff., Ex. 23.) On May 8, 2003, Kennett received a letter from Ayco indicating that plaintiff was employed from August 31, 1998 through January 24, 2003, and was therefore not employed at Ayco in March of 2003.[4] (UWDC Defs. Rule 56.1 Stmt. ¶ 17.) Both Williamson and Simmons testified that they had not asked Kennett to check the dates of plaintiff's employment at Ayco. (Williamson Dep. at 245; Simmons Dep. at 111.) However, Kennett maintains that Williamson instructed her to follow up with Ayco and that he was aware she was doing so. (Kennett Dep. at 224, 227, 237.) Williamson admits that he told both plaintiff and Kennett that he had decided to waive the reference requirement as a condition to plaintiff's employment. (Williamson Dep. at 215, 244–45.)

The UWDC terminated plaintiff's employment on May 9, 2003. (UWDC Defs. Rule 56.1 Stmt. ¶ 18.) According to the UWDC defendants, the decision was made as a result of plaintiff's allegedly "knowing misrepresentations" regarding her employment history during the interview process. (*Id.*) The UWDC defendants allege that plaintiff made two material misrepresentations regarding her employment history: (1) that she was employed by Ayco in March of 2003; and (2) that she intentionally omitted another employer, a company called GHI HMO Select Inc. ("GHI"), from the resume she sent to the UWDC. (*Id.* ¶¶ 20–22, 24.) Plaintiff admits that she omitted her employment with GHI from the resume she submitted to the UWDC and also from the background screening forms she filled out as part of the UWDC's interview process, but did so because she was employed there for a very short period of time. (Pl. Rule 56.1 Stmt. ¶ 22.) Plaintiff contends that this omission could not have played a role in her termination because Williamson and Kennett had no knowledge of it at the time. (*Id.*) According to plaintiff, her alleged misrepresentation about the dates of her employment at Ayco could not have been the reason the UWDC defendants decided to terminate her because: (1) plaintiff understood that Williamson had already contacted Ayco at the time he made her an offer of employment at the UWDC; and (2) she explained to Williamson and Simmons during the interview process that she was on a leave from Ayco and also why she was unsure of her employment status at Ayco. (*Id.* ¶¶ 32, 33.) Plaintiff notes that she listed January 2003 as her end date at Ayco on the Fidelifacts form, which she knew was being used by the UWDC as part of her background check, and questions why she would have

---

4. The May 8, 2003 fax from Ayco stated that, "Sandra started employment on 8/31/98 and *terminated* on 1/24/03." (Wigdor Aff., Ex. 7.) However, the second fax that Ayco sent to the UWDC on May 12, 2003 clarified that, "Sandra started employment on 8/31/98 and *resigned* on 1/24/03." (*Id.*, Ex. 8 (emphasis added).)

listed the January 2003 date if her true motive was to hide that information from the UWDC defendants. (*Id.* ¶ 13.)

According to plaintiff, Williamson told her that he would reconsider her termination if she could provide documentation showing that she was not terminated from Ayco. (*Id.* ¶ 77.) The UWDC defendants maintain that Williamson said he would reconsider plaintiff's termination if she provided documentation that she was employed by Ayco in March of 2003. (UWDC Defs. Rule 56.1 Stmt., Pl. Stmts. Denied ¶ 77.) Plaintiff maintains that she sent the UWDC a copy of a letter from Ayco stating that she had resigned and not been terminated, but received no response from Williamson. (Pl. Rule 56.1 Stmt. ¶¶ 78–81.) The UWDC defendants admit that after plaintiff was terminated the UWDC received a second letter from Ayco, dated May 12, 2003, which indicated that plaintiff had resigned on January 24, 2003. (UWDC Defs. Rule 56.1 Stmt. ¶ 19.)

Plaintiff maintains that during her termination meeting Williamson said that her credit report was "terrible." (Pl. Rule 56.1 Stmt. ¶ 82.) Williamson admits that he mentioned plaintiff's credit report during her termination meeting, but maintains that he told plaintiff that her credit report was worse that he had anticipated, instead of "terrible." (UWDC Defs. Rule 56.1 Stmt., Pl. Stmts. Denied ¶ 82.) Plaintiff never received a copy of her credit report. (Pl. Mem. Opp. Summ. J. at 10.) In Kennett's April 25, 2003 e-mail to Williamson she also stated that she was concerned because plaintiff's background check "indicates that she has problems managing her personal finances," and went on to question whether plaintiff should "be put in a position of managing United Way assets." (Wigdor Aff., Ex. 11.)

On or about July 7, 2003, plaintiff filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC"). (Complt.¶ 9.) Plaintiff received a Dismissal and Notice of Rights letter from the EEOC, dated October 16, 2003. (Wigdor Aff., Ex. 2.) On January 13, 2004, plaintiff filed her Complaint in the present action alleging the following claims: (1) against the UWDC and the UWA, discrimination on the basis of gender and pregnancy in violation of Title VII; (2) against the UWA, the UWDC and Williamson, discrimination on the basis of gender and pregnancy in violation of the NYSHRL; (3) against Williamson, knowing and reckless aiding and abetting unlawful discrimination in violation of the NYSHRL; and (4) against the UWA, the UWDC and Williamson, violations of the FCRA. (Complt.¶¶ 79–98.)

## DISCUSSION

### I. *Standard on Motion for Summary Judgment*

Under FED. R. CIV. P. 56, summary judgment may be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The burden rests on the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine factual issue exists if there is sufficient evidence favoring the nonmovant for a reasonable jury to return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding whether summary judgment is appropriate, the court resolves all ambiguities and draws all permissible factual inferences against the movant. *See id.* at 255, 106 S.Ct. 2505. To defeat summary judgment, the nonmovant must go beyond the pleadings and "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574,

586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's role at this stage of the litigation is not to decide issues of material fact, but to discern whether any exist. *See Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir.1994).

## II. *Defendant UWA*

■ The UWA contends that summary judgment is warranted because plaintiff is unable to show either: (1) that the UWA employed her directly or as a joint employer; or (2) that the UWA took any adverse action against her that could support a claim for discrimination.[5] (*Id.* at 3.) The UWA also contends that plaintiff's own testimony demonstrates that the UWA did not engage in any violation of the FCRA. (*Id.* at 4.) It is undisputed that plaintiff was not directly employed by the UWA. Therefore, the issue is whether the UWA was sufficiently integrated with the UWDC so that they were operating as joint employers with respect to plaintiff.

There are several ways for a court to assess whether "a defendant is an 'employer' within the meaning of Title VII and other employment discrimination statutes." *Rivera v. Puerto Rican Home Attendants Serv., Inc.*, 922 F.Supp. 943, 949 (S.D.N.Y. 1996) (noting that the various formulations all focus on the amount of control or supervision a defendant exerts over another company's employees). One approach used by this Court and other courts in this Circuit, often called the "integrated enterprise" approach, seeks to determine whether two entities are "so interrelated that they may be treated as a 'single employer' for the purpose of Title VII." *Id.*; *see also Arculeo v. On–Site Sales & Marketing, LLC*, 321 F.Supp.2d 604, 608 (S.D.N.Y.2004) (Conner, J.) (noting that the joint employer doctrine is analytically similar to the single employer doctrine). The integrated enterprise approach "can enable an employee to hold two or more nominally separate business entities accountable as a single entity under anti-discrimination laws ...." *Regan v. In the Heat of the Nite, Inc.*, No. 93 Civ. 862, 1995 WL 413249, at *2 (S.D.N.Y. July 12, 1995), 1995 U.S. Dist. LEXIS 9682, at *5.

Under the integrated enterprise approach courts consider four factors to uncover evidence of: (1) interrelated operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership, between two entities. *See Russo v. Lightning Fulfillment, Inc.*, 196 F.Supp.2d 203, 207 (D.Conn.2002) (quoting *Radio & Television Broadcast Technicians Local Union v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (per curiam)); *see also Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235 (2d Cir.1995). Generally, a "joint employer relationship may be found where there is sufficient evidence that a defendant had immediate control over another company's employees," and even more importantly, over the particular employee alleging discrimination. *Rivera*, 922 F.Supp. at 949 (noting that "[r]elevant factors include the commonality of hiring, firing, discipline, pay, insurance records and supervision").[6] Upon

---

**5.** Essentially, the UWA maintains that it was not plaintiff's "employer" under Title VII or the NYSHRL, both of which prohibit an "employer" from discriminating against employees. According to the UWA, plaintiff's Complaint contains only "baseless allegations of a 'joint employer' relationship between UWA and UWDC, and does not allege any involvement, direct or otherwise, by UWA" in plaintiff's allegedly discriminatory discharge. (UWA Mem. Supp. Summ. J. at 4.)

**6.** We note that the integrated enterprise doctrine is reserved for exceptional cases only and will generally be found only where there is sufficient evidence that the defendant had a "hands on" relationship with the employee at issue. *See Balut v. Loral Electronic Sys.*, 988

careful consideration of the factors listed above, we conclude that the UWA and the UWDC do not function as an integrated enterprise or joint employers. Consequently, we hold that the UWA is not plaintiff's "employer" for purposes of Title VII and the NYSHRL.[7]

First, plaintiff has failed to demonstrate an interrelation of operations between the UWA and the UWDC. As plaintiff correctly notes, the UWDC is a member organization of the UWA, which means that it must comply with certain ethical and not-for-profit standards and pay annual membership dues. (UWA Rule 56.1 Stmt. ¶ 8; Pl. Mem. Opp. Summ. J. at 7–10.) Plaintiff also notes that the UWA licenses the use of the United Way logo and trade name to member organizations and that such use is subject to certain guidelines and restrictions related to maintaining a consistent representation to the general public. (Pl. Mem. Opp. Summ. J. at 7–10.) Additionally, plaintiff notes that the UWA provides member organizations with access to broad-based services such as electronic and web-based practice, communication, employment, marketing and education materials. (*Id.*) However, these assertions offer little, if any, weight for purposes of the present inquiry.

We find more persuasive the fact that the UWA and the UWDC never shared a payroll system, accounting records, a bank account or line of credit, advertising budget, telephone line or office space. (Pl.

Rule 56.1 Stmt. ¶¶ 26, 40–42, 46, 47, 57–60.); *Tatum v. Everhart*, 954 F.Supp. 225, 228 (D.Kan.1997) (noting that the aforementioned factors have been recognized as indicia of interrelatedness for purposes of joint employer liability); *see also Balut*, 988 F.Supp. at 346 (noting that the two defendant corporations did not share a common office space); *cf. Regan*, 1995 WL 413249, at *1 1995 U.S. Dist. LEXIS 9682, at *1–2 (finding sufficient evidence of interrelatedness and denying defendant's motion for summary judgment where the two corporations' employee records, payroll records and bank deposits were kept together). Additionally, the UWA and the UWDC are independently incorporated, "operate under separate bylaws, are governed by separate boards, and have separate IRS exemptions." *Tatum*, 954 F.Supp. at 228. The evidence before us does not establish an interrelation of operations between the UWA and the UWDC.

Second, plaintiff has failed to allege any evidence of common management between the UWA and the UWDC. As stated *supra*, the UWDC is governed by an independent Board of Governors, with no overlap at all between the board and management of the UWA. (UWA Rule 56.1 Stmt. ¶¶ 9–11; Pl. Rule 56.1 Stmt., UWA Stmts. Denied ¶¶ 9–11); *see Tatum*, 954 F.Supp. at 229 (noting in a similar case a lack evidence of common directors, officers or board members between the UWA and the United Way of

F.Supp. 339, 347 (S.D.N.Y.1997) (Conner, J.). Moreover, the burden on the employee can be extremely difficult, where, as here, plaintiff "attempts to show not that a subsidiary is integrated with its parent, but rather," that two seemingly independent corporations should be considered as one. *See Regan*, 1995 WL 413249, at *2, 1995 U.S. Dist. LEXIS 9682, at *5.

**7.** Plaintiff attempts to argue that joint employer liability exists automatically between the

UWA and the UWDC merely because they have become associated with each other via a contractual relationship. However, plaintiff has confused the aforementioned concept, which is a description of the type of entities that may be held up to scrutiny under the joint employer doctrine, for the actual inquiry itself which, as discussed *supra*, focuses on whether one entity has immediate control over the other entity's employees. *See Rivera*, 922 F.Supp. at 949 (quoting *NLRB v. Solid Waste Serv., Inc.*, 38 F.3d 93 (2d Cir.1994)).

Wyandotte County). That same independent Board of Governors is also responsible for adopting and maintaining the UWDC's bylaws and governance procedures. (*Id.*) Plaintiff admits these facts and fails to allege any evidence to the contrary, further supporting the notion that the UWA and the UWDC do not operate as joint employers. (Pl. Rule 56.1 Stmt., UWA Stmts. Denied ¶¶ 9–11.)

The third factor to consider is centralized control of labor relations.[8] To establish that the UWA had centralized control over the UWDC's labor relations, plaintiff must submit evidence that the UWA had actual day-to-day control over the UWDC's employment decisions. *See Tatum*, 954 F.Supp. at 229 (quoting *Eichenwald v. Krigel's, Inc.*, 908 F.Supp. 1531, 1541 n. 9 (D.Kan.1995)) (noting that potential control is not enough for a finding of centralized control of labor relations). Additionally, there must be evidence that the UWA had and exercised actual control with respect to plaintiff's employment specifically. *Id.* (noting the importance of the plaintiff's actual experience as an employee with respect to whether an entity hired the plaintiff, fired the plaintiff, or supervised the plaintiff's work on a daily basis). Here, there is no evidence that the UWA had day-to-day, or any other, control over the UWDC's labor relations. Even more importantly, plaintiff has not demonstrated that the UWA hired, reviewed or fired plaintiff or played any role at all in making those decisions.

Rather, it is uncontroverted that: (1) plaintiff was not interviewed by any employee of the UWA prior to becoming employed at the UWDC; (2) Williamson did not consult with the UWA with respect to plaintiff's hiring, her offer letter or the terms of the offer itself; (3) Kennett did not consult with anyone at the UWA with regard to obtaining a credit report or reference check on plaintiff; (4) the UWA was not contacted in connection with the decision to terminate plaintiff's employment with the UWDC; and (5) the UWA was not aware of the UWDC's decision to terminate plaintiff's employment prior to her termination. (UWA Rule 56.1 Stmt. ¶¶ 88, 95, 116, 119, 122, 123; Pl. Rule 56.1 Stmt., UWA Stmts. Denied ¶¶ 88, 95, 116, 119, 122, 123.) The fact that, as plaintiff notes, the UWA maintains a job posting database on its website, collects information regarding member organizations' personnel profiles, in terms of total number of employees and average salary, and offers general policy statements or guidelines on employment matters is not sufficient evidence to establish centralized control. *See Tatum*, 954 F.Supp. at 230; *see also Balut*, 988 F.Supp. at 347.

The final factor to consider is whether there is evidence of common ownership or financial control between the UWA and the UWDC. The "UWA and its member organizations are nonprofit, charitable organizations and not owned in the traditional commercial sense. Although financial accountability is part of the eligibility criteria to become a member organization," and the amount of membership dues is

---

**8.** We note that many courts consider centralized control of labor relations to be the most important factor in this type of inquiry. *See Cook*, 69 F.3d at 1241 ("We focus our inquiry ... on the second factor, centralized control of labor relations."); *see also Laurin v. Pokoik*, No. 02 Civ.1938, 2004 WL 513999, at *6 (S.D.N.Y. Mar. 15, 2004), 2004 U.S. Dist. LEXIS 4066, at *19 ("Centralized control over labor relations, the most important prong in the single-employer inquiry, can include such factors as whether the companies have separate human-resources departments and whether the entity 'establishes its own policies and makes its own decisions as to the hiring, discipline, and termination of its employees.' ") (citation omitted).

calculated based on the success of the individual fund-raising campaigns, plaintiff does not submit any evidence indicating that the UWA exercises common ownership or financial control over the UWDC or any of its member organizations. *See Tatum,* 954 F.Supp. at 229–30.

Because we find the evidence insufficient to show that the UWA and the UWDC operate as joint employers or an "integrated enterprise," we decline to hold that the UWA was plaintiff's employer for purposes of her discrimination claims.[9] Accordingly, the UWA's motion for summary judgment is granted and all claims against the UWA are dismissed with prejudice.[10]

## III. *Defendants UWDC and Williamson*

### A. *Pregnancy Discrimination Act*

The PDA is a definitional amendment to Title VII enacted to include pregnancy-based discrimination within Title VII's prohibition of gender-based employment discrimination. The elements of an employment discrimination claim are "virtually identical" under the New York Executive Law and Title VII. *LaCoparra v. Pergament Home Centers, Inc.,* 982 F.Supp. 213, 225 (S.D.N.Y.1997) (Conner, J.). Therefore, our analysis of plaintiff's Title VII claim is also applicable to plaintiff's claim under the NYSHRL.[11]

A claim for employment discrimination is governed by the three-step burden-shifting analysis of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Dean v. Westchester County Dist. Attorney's Office,* 119 F.Supp.2d 424, 430 (S.D.N.Y.2000) (Conner, J.). Under the *McDonnell Douglas* analysis, the plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff is successful, a presumption that the employer unlawfully discriminated against the plaintiff is raised and the burden of production then shifts to the employer to "articulate a legitimate, clear, specific and non-discriminatory reason" for its actions. *Quaratino v. Tiffany & Co.,* 71 F.3d 58, 64 (2d Cir.1995). If the employer does so, the presumption of discrimination no longer applies and the plaintiff has the burden to establish by a preponderance of the evidence that the employer's stated reason was merely a pretext for discrimination. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). In addition, the plaintiff must submit evidence that would permit a rational fact finder to infer that the discharge was actually motivated, in whole or in part, by discrimination. *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 561 (2d Cir.1997). In other words, the defendant's proffered reason "cannot be proved to be 'a pretext for *discrimination*' unless it is shown *both* that the reason was false *and* that discrimination was the real reason." *St. Mary's Honor Ctr.,* 509 U.S. at 515, 113 S.Ct. 2742 (emphasis in original).

To establish a *prima facie* case of discrimination, plaintiff must establish that: (1) she is a member of a protected class; (2) she was performing her duties satisfactorily; (3) she was discharged or suffered

---

**9.** Because we conclude that plaintiff has failed to show that the UWA employed her either directly or indirectly, as a joint employer, it is not necessary to address the UWA's remaining arguments herein.

**10.** As discussed in more detail *infra,* in Part IV., the UWA's motion is granted with respect to plaintiff's FCRA claim because we have concluded that the UWA and the UWDC do not operate as an integrated enterprise and because plaintiff makes no independent claims against the UWA under the FCRA.

**11.** However, it should be noted that plaintiff's Title VII violation claim only applies to the UWDC and not Williamson individually, while plaintiff's NYSHRL violation claim applies to both the UWDC and Williamson. (Complt. ¶¶ 79–98.)

an adverse employment action; and (4) her position remained open and was ultimately filled by a non-pregnant employee. *Quaratino,* 71 F.3d at 64. In the alternative, plaintiff may satisfy the fourth element by showing that the discharge "occurred in circumstances giving rise to an inference of unlawful discrimination." *Id.; Kerzer v. Kingly Mfg.,* 156 F.3d 396, 401–02 (2d Cir.1998). Plaintiff's burden to establish a *prima facie* case is *de minimus. See Cronin v. Aetna Life Ins. Co.,* 46 F.3d 196, 203–04 (2d Cir.1995).

### B. Plaintiff's Prima Facie Case

█ It is not in dispute that plaintiff is a member of a protected class, that she performed her duties satisfactorily or that she suffered an adverse employment action. What remains in dispute, however, is whether the adverse employment action occurred under circumstances giving rise to an inference of discrimination.[12] Plaintiff's burden "is not onerous." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253–54, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).[13]

In support of her claim for unlawful discrimination, plaintiff offers the following evidence: (1) plaintiff advised the UWDC defendants of her uncertainty regarding her employment status at Ayco during the hiring process; (2) Williamson and Simmons knew that plaintiff was not actually working at Ayco at the time she was hired; (3) Williamson and Simmons explicitly waived any requirement for a reference check from Ayco based on other positive references and positive performance evalu-

ations they received from Ayco; (4) Kennett's April 25, 2003 e-mail in which she charged that plaintiff had been less than forthcoming about her pregnancy; (5) the temporal proximity of less than one month between plaintiff's announcement of her pregnancy and her termination; and (6) the temporal proximity of mere days between plaintiff's announcement of her having toxoplasmosis and her termination. (Pl. Mem. Opp. Summ. J. at 15–16.)

Considering the light burden on plaintiff, we conclude that there is sufficient evidence to establish the fourth element of a *prima facie* case. *See Burdine,* 450 U.S. at 253–54, 101 S.Ct. 1089; *see also Pellegrino v. County of Orange,* 313 F.Supp.2d 303, 315 (S.D.N.Y.2004) (noting that evidence of a temporal proximity between an employee's announcement that she was pregnant and her termination is sufficient to establish an inference of discrimination). Therefore, plaintiff has presented a *prima facie* case of pregnancy discrimination. ·

### C. UWDC Defendants' Proffered Legitimate Non–Discriminatory Reason

█ Once plaintiff has established a *prima facie* case of discrimination, the burden of production passes to the UWDC defendants to offer a legitimate, non-discriminatory reason for terminating plaintiff's employment. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Any such reason will suffice; the employer " 'need not persuade the court that it was actually motivated by the proffered reasons' in order to nullify the presumption and obligate the plaintiff to

---

**12.** Since plaintiff has not introduced evidence showing that her position remained open and was eventually filled by a non-pregnant employee, we turn our focus to the alternative showing under the fourth prong of a *prima facie* case.

**13.** In fact, some courts within this Circuit assume the existence of a *prima facie* case

and move to the "ultimate issue" of "whether the plaintiff has proven that it is more likely than not that the employer's discriminatory decision was motivated at least in part by an 'impermissible,' or discriminatory, reason." *Shafrir v. Ass'n of Reform Zionists of Am.,* 998 F.Supp. 355, 360 (S.D.N.Y.1998).

satisfy the burden of proof." *Fisher*, 114 F.3d at 1335–36 (quoting *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089).

The UWDC defendants contend that plaintiff was terminated as a result of her allegedly "knowing misrepresentations" during the employment application process. (UWDC Defs. Mem. Supp. Summ. J. at 10.) This explanation constitutes a legitimate, non-discriminatory reason for plaintiff's termination.[14] *See Robinson*, 2001 WL 863418, *6, 2001 U.S. Dist. LEXIS 10810, *19–20. Accordingly, the *prima facie* presumption of discrimination is dispelled and the burden shifts back to plaintiff to offer evidence sufficient to permit a rational jury to decide that the UWDC defendants' proffered justification is in fact a pretext for discrimination. *See Hicks*, 509 U.S. at 515, 113 S.Ct. 2742.

### D. *Pretext*

■ At this stage, plaintiff will prevail only if she shows by a preponderance of the evidence that the UWDC defendants' proffered explanation is a pretext for discrimination, "either because the pretext finding itself points to discrimination or because other evidence in the record points in that direction— or both." *Fisher*, 114 F.3d at 1339.

We conclude that the evidence of pretext presented by plaintiff, which is essentially the same evidence she put forth to establish her *prima facie* case, has created a material issue of fact as to whether the UWDC defendants' claim that plaintiff was fired as a result of her alleged knowing misrepresentations is a pretext for discrimination. In particular, we find that the following evidence could lead a reasonable trier of fact to conclude that pregnancy was a motivating factor in the UWDC defendants' decision to terminate plaintiff's employment and that the UWDC defendants' proffered explanation is actually a pretext for pregnancy discrimination: (1) the April 25, 2003 e-mail from Kennett to Williamson wherein she criticizes plaintiff for being "less than forthcoming when hired about her pregnancy" and questions whether they were taking plaintiff's future maternity leave into consideration when making their recent decisions; (2) the alleged change in attitude toward plaintiff after she announced her pregnancy and her toxoplasmosis diagnosis; (3) the temporal proximity between plaintiff's termination and her announcement of her pregnancy and toxoplasmosis diagnosis; (4) the fact that plaintiff advised Williamson and Simmons of her uncertainty regarding the status of her employment at Ayco and that they understood that she was not actually physically working at Ayco in March of 2003; (5) the fact that Williamson and Simmons had waived the requirement of a reference check from Ayco and communicated the same to both plaintiff and Kennett; and (6) the fact that plaintiff performed her duties well and received compliments about her work during her employment at the UWDC.[15]

**14.** While we recognize that plaintiff may have offered explanations for her alleged misrepresentations, the statement contained in her resume and cover letter regarding her being presently employed at Ayco in March of 2003 could certainly be viewed as a false statement. Therefore, defendants' termination of plaintiff could be considered justified in light of the statement plaintiff signed which read "I understand that false or misleading information given in my application or interview(s) may result in discharge." (UWDC Defs. Rule 56.1

Stmt. ¶ 7); *see Robinson v. N.Y. City Health Dep't*, No. 00 Civ. 8969 (S.D.N.Y. July 26, 2001), 2001 U.S. Dist. LEXIS 10810, at *19–20. However, whether or not plaintiff told the truth is not at issue here. Rather, the issue, as discussed *infra*, in Part III.D, is whether plaintiff has presented enough evidence to establish that the UWDC defendants' proffered reason for her termination was actually a pretext for an impermissible reason.

**15.** The UWDC defendants request that we adopt the EEOC's findings. (UWDC Mem.

The Second Circuit has indicated that "a trial court must be cautious about granting summary judgment to an employer when ... intent is at issue." *Gallo*, 22 F.3d at 1224. Accordingly, this is not an appropriate case to be resolved by summary judgment and therefore the UWDC defendants' motion with respect to plaintiff's first, second and third claims must be denied.[16] We will now consider the UWDC defendants' motion with respect to plaintiff's fourth and final claim involving alleged violations of the FCRA.

## IV. *FCRA*

█ Plaintiff alleges that the UWDC defendants violated the FCRA, in particular 15 U.S.C. § 1681b(b)(3), because they failed to provide her with a copy of her credit report, which they relied upon in deciding to terminate her employment.[17] (Complt. ¶ 95; Pl. Mem. Opp. Summ. J. at 24.)

Section 1681b(b)(3) of the FCRA provides that:

in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take

such adverse action shall provide to the consumer to whom the report relates (A) a copy of the report; and (B) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission ....

15 U.S.C. § 1681b(b)(3).

The UWDC defendants do not dispute that plaintiff was not provided with a copy of her credit report. (UWDC Defs. Mem. Supp. Summ. J. at 14.) Rather, they contend that no adverse action was taken when the UWDC received plaintiff's credit report because they made the decision to terminate plaintiff only upon learning of her alleged employment application misrepresentations. (*Id.*) The UWDC defendants also maintain that there is no evidentiary support for plaintiff's claim that her termination was based on information contained in the credit report. (*Id.*) We disagree.

In the April 25, 2003 e-mail from Kennett to Williamson, Kennett states, "I have concerns with the results of Sandra's [plaintiff's] background check .... I have concerns that we are giving Sandra [plain-

---

Supp. Summ. J. at 7.) However, it is well-settled that EEOC determinations do not preclude a trial *de novo* in federal court. *See Weise v. Syracuse Univ.*, 522 F.2d 397, 413 (2d Cir.1975). Thus, "district courts have substantial discretion with respect to the weight to be accorded an EEOC determination." *Greenberg v. N.Y. City Transit Auth.*, 336 F.Supp.2d 225, 241–42 (S.D.N.Y.2004) (citing *Wanamaker v. Columbian Rope Co.*, 907 F.Supp. 522, 538 n. 24 (N.D.N.Y.1995), *aff'd*, 108 F.3d 462 (2d Cir.1997)). We deny the UWDC defendants' request and accord the EEOC determination no weight in this case because it was "sparse and conclusory" and provides no indication of what the EEOC's investigation actually involved. *Id.*

16. Because we conclude that there are material issues of fact as to plaintiff's second claim, whether the UWDC defendants violat-

ed the NYSHRL, we similarly conclude that there are material issues of fact as to plaintiff's third claim, whether Williamson "aided and abetted" a violation of the NYSHRL.

17. In the Complaint plaintiff also alleges that the UWDC defendants violated the FCRA by: (1) failing to disclose to her in writing that they were going to obtain her credit report; and (2) failing to obtain her written permission prior to obtaining her credit report. (Complt.¶¶ 96, 97.) However, based on plaintiff's own explanation of her FCRA claim in her response papers and the evidence submitted by both parties, it appears that plaintiff has since withdrawn her claims with respect to these other FCRA violations. (Pl. Mem. Opp. Summ. J. at 24.) Accordingly, we will address only plaintiff's claim under 15 U.S.C. § 1681b(b)(3) herein.

tiff] fiscal responsibilities .... The [credit] report indicates that she has problems managing her personal finances; so the question becomes should she be put in a position of managing United Way assets." (Wigdor Aff., Ex. 11.) Also, according to plaintiff, when she was terminated Williamson told her that her credit report was "terrible." (Pl. Rule 56.1 Stmt. ¶ 82; Woodell Dep. at 100.) Furthermore, the UWDC defendants admit that Williamson did mention plaintiff's credit report during her termination meeting, and that he told plaintiff that her credit was worse than he had anticipated. (UWDC Defs. Rule 56.1 Stmt., Pl. Stmts. Denied ¶ 82.)

Viewing the evidence as we must, in the light most favorable to plaintiff, we cannot state as a matter of law that no genuine factual dispute exists with respect to plaintiff's FCRA claim. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Therefore, we conclude that plaintiff has presented sufficient evidence from which a fact finder could reasonably conclude that the UWDC defendants based the decision to terminate plaintiff, either in whole or in part, on her credit report. Accordingly, we deny the UWDC defendants' motion with respect to plaintiff's fourth claim as it pertains to the UWDC, and we must now consider whether Williamson may be held individually liable under the FCRA.

■ Williamson may be held liable as a user of information under § 1681 for violating § 1681b(b)(3) if it is found that he impermissibly obtained plaintiff's credit report for personal purposes, rather than merely in the ordinary course of his employment. *See Northrop v. Hoffman of Simsbury, Inc.,* 134 F.3d 41, 49 (2d Cir. 1997) (quoting *Austin v. BankAmerica Serv. Corp.,* 419 F.Supp. 730, 734 (N.D.Ga. 1974)) ("The Fair Credit Reporting Act is inapplicable to these defendants who are merely employees of a 'user' of consumer credit reports...."); *see also Wiggins v.*

*Hitchens,* 853 F.Supp. 505, 509 (D.D.C. 1994) (finding that individual defendants could only be considered "users" under the FCRA if they were acting outside of the scope of their employment). Plaintiff has not alleged any facts that could support a finding that Williamson requested or used her credit report for anything other than the performance of his duties as an employee of the UWDC. Accordingly, we grant the UWDC defendants' motion with respect to plaintiff's fourth claim as it pertains to Williamson.

## CONCLUSION

For all of the foregoing reasons, the United Way of America's motion for summary judgment is granted with respect to all of plaintiff's claims; the United Way of Dutchess County's motion for summary judgment is denied with respect to plaintiff's first, second and fourth claims; and Williamson's motion for summary judgment is denied with respect to plaintiff's second and third claims, but granted with respect to plaintiff's fourth claim.

SO ORDERED.