**Patricia McCarthy TOMASSI Plaintiff,**

v.

**INSIGNIA FINANCIAL GROUP, INC., Insignia Residential Group, Inc., and Metlife, Defendants**

**No. 04 CIV.2383 MBM.**

United States District Court, S.D. New York.

Nov. 7, 2005.

Christopher P. Kelly, Esq., Reppert Kelly & Satriale, Basking Ridge, NJ, for Plaintiff.

Douglas E. Rowes, Esq., Certilman Balin Adler & Hyman, East Meadow, for Defendants.

## OPINION & ORDER

MUKASEY, District Judge.

Plaintiff Patricia McCarthy Tomassi ("Tomassi") sues Insignia Financial Group, Inc., and Insignia Residential Group, Inc. (collectively "Insignia"), as well as Metlife, Inc. ("MetLife"), alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 (2000), age discrimination and harassment in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 296(1)(a) (2005), age discrimination and harassment in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–107 (2003), sex discrimination and harass-

ment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e–2(a), sex discrimination and harassment in violation of the NYSHRL, N.Y. Exec. L. § 296(1)(a), and sex discrimination and harassment in violation of the NYCHRL, N.Y.C. Admin. Code § 8–107. Defendants move for summary judgment under Federal Rule of Civil Procedure 56(c). For the reasons set forth below, the motion is granted.

## I.

The following facts, viewed in the light most favorable to Tomassi, are relevant to this opinion. In February 2000, MetLife hired Tomassi as the Supervisor of Resident Services for the Peter Cooper Village and Stuyvesant Town housing complexes ("PCV/ST"). (Compl.¶ 11) Tomassi was 60 years old when she was hired by MetLife. (Compl.¶ 7) As the Supervisor of Resident Services, Tomassi handled resident service requests and managed approximately 20 call center representatives. (Compl.¶ 11) In 2001, MetLife outsourced the management of the PCV/ST complex, which it owns, to Insignia. (Compl.¶ 12) On May 1, 2001, Tomassi became an employee of Insignia, continuing to perform the same services she had as a MetLife employee. (Compl.¶ 12) In May 2001, Insignia appointed Steve Stadmeyer as General Manager of PCV/ST. (Compl.¶ 13)

Tomassi alleges that from May 2001 until the time of her termination Stadmeyer made references to Tomassi's age, such as "Gee Pat, in your time is that what they did?" or "Gee, do you ever get tired of working ... do you think of retiring?" as well as stating that Tomassi and an elderly resident "spoke the same language" and she could "understand him." (Compl.¶ 24) Stadmeyer also asked Tomassi if she "could keep up with some of the work." (Tomassi Dep. at 29) Stadmeyer made such age-related comments to Tomassi "once a month, once every couple of months." (Tomassi Dep. at 50)

Tomassi also alleges Stadmeyer made sexually harassing comments in her presence, in particular he would make double entendres and comment on the way women in the office dressed. (Compl.¶ 25) Specifically, Tomassi remembers Stadmeyer commenting "oh, it's a short skirt today," "you look like you had a fun weekend," "you're going to have fun down in South Beach," and "that's a provocative dress you have on." (Tomassi Dep. at 32, 52–53) On one occasion, after sexual paraphernalia were found in one of the complex's apartments, Stadmeyer commented to Tomassi in a staff meeting, "Pat, did you go check out the items—did you find anything interesting?" (Compl.¶ 25) Tomassi never complained to Stadmeyer that she found his behavior offensive, nor did she complain to anyone else at Insignia or MetLife. (Tomassi Dep. at 32, 77)

In November 2001, Insignia began a renovation project at PCV/ST to attract young professionals to the complex and enacted a new policy encouraging more communication between management and residents. (Compl.¶ 15) In November 2001, Stadmeyer promoted Tomassi to Director of Resident Services, giving her responsibility for both resident services and community affairs matters. (Compl. ¶ 14; Stadmeyer Dep. at 69) In her new position, Tomassi often made efforts to reach out to the senior residents of PCV/ST; in her deposition she stated that she "was an advocate for seniors" and she "was trying to renovate the senior lounge." (Tomassi Dep. at 91) Between May 2001 and May 2003, Stadmeyer increased Tomassi's salary three times by a total of $14,600. (Plaintiff's 56.1 Statement ¶¶ 25, 28, 35)

In September 2002, Stadmeyer reorganized the Resident Services Group, in-

structing employees to cease reporting to Tomassi and instead to report to the Director of Operations. (Compl.¶ 18) In November 2002, Stadmeyer hired an administrative assistant for Tomassi. (Compl.¶ 19) In late 2002, Stadmeyer met with Tomassi and instructed her to prepare a written response to certain resident complaints, but after a month the complaints were not resolved and Stadmeyer reassigned the responsibility for handling those complaints to his administrative assistant. (Stadmeyer Aff. ¶ 21)

In early 2003, Tomassi's workload increased due to a gas explosion at PCV/ST in February and a construction project beginning in April. (Compl.¶ 20) During that same time, Stadmeyer received reports that Tomassi was not responding to tenant complaint letters promptly. (Stadmeyer Aff. ¶ 18) Tomassi admits that Stadmeyer spoke to her about his concern that letters were not being answered in a timely manner, but she explained "Mr. Stadmeyer wanted us to write a letter and say we were working on [the complaint]. It was too much . . . so my way of handling it was calling the resident, which seemed to be fine." (Tomassi Depo. 73) In February 2003, Stadmeyer's administrative assistant took over Tomassi's responsibility for addressing written correspondence. (Stadmeyer Aff. ¶ 19). The task of overseeing the relocation of tenants affected by the February gas explosion also was removed from Tomassi after Stadmeyer determined she could not perform her duties in a timely manner. (Stadmeyer Aff. ¶ 20) Additionally, Tomassi violated Insignia's corporate policy for communicating with the media. (Stadmeyer Aff. ¶¶ 23–25)

On May 7, 2003, Stadmeyer told Tomassi that she was no longer needed at Insignia because he had hired someone with website experience to take over her responsibilities. (Compl.¶ 21) During this conversation, Stadmeyer told Tomassi he assumed she was "independently wealthy" and probably did not want to work full time. (Compl.¶ 21) He also stated that he knew she got along well with seniors and he figured she could do some work with them. (Tomassi Dep. at 39) Stadmeyer testified at his deposition that he falsely told Tomassi she was being fired because he needed someone with website experience; his real reason was his concern over her inability to perform her tasks efficiently. (Plaintiff's 56.1 Statement, ¶ 46) Tomassi's last day of employment was May 19, 2003. (Compl.¶ 21) Insignia hired 25-year–old Saskia Whitkam to handle Tomassi's prior responsibilities over tenant notices, the tenant newsletter, the PCV/ST website, and public relations matters. (Stadmeyer Aff. ¶ 28, 29)

When she was hired by Insignia in May 2001, Tomassi was provided the Insignia Employee Handbook and she signed an Employee Receipt and Acknowledgment for the handbook. (Stadmeyer Aff. ¶ 11; Def. Ex. C) Tomassi also attended a Sexual Harassment Awareness and Prevention Seminar provided by Insignia. (Def.Ex. E, F) Tomassi never brought any discriminatory or sexually harassing conduct to the attention of anyone at Insignia, despite her knowledge of Insignia's sexual harassment policy and procedures. (Stadmeyer Aff. ¶¶ 32, 33) According to Tomassi, she did not complain to Stadmeyer or any of his superiors about his behavior, because "I had a job I liked . . . so I felt that it didn't behoove me to make an official complaint . . . I didn't want to appear not to be a team player." (Tomassi Depo. 77)

On July 31, 2003, Tomassi sent a letter to the Chairman of MetLife regarding her termination and experience as an Insignia employee; nowhere in the letter did she state that she was subjected to a hostile work environment or that she was termi-

nated due to her age. (Defs.Ex. G) On or about September 26, 2003, Tomassi filed a Charge of Discrimination against Insignia and MetLife with the United States Equal Employment Opportunity Commission ("EEOC"). (Compl.¶ 5) On December 29, 2003, Tomassi received a Notice of the Right to Sue from the EEOC. (Compl.¶ 6) Tomassi filed her complaint against Insignia and MetLife on March 25, 2004.

## II.

Tomassi alleges that she was fired on account of her age and that she was subject to a hostile work environment as a result of sexually harassing verbal comments. Insignia and MetLife move for summary judgment on Tomassi's ADEA, NYSHRL, and NYCHRL claims related to age discrimination on the ground that her employment was terminated due to her unsatisfactory job performance. Insignia and MetLife move for summary judgment on Tomassi's Title VII, NYSHRL, and NYCHRL claims related to gender discrimination on the ground that she did not comply with Insignia's sexual harassment complaint procedures. Metlife moves for summary judgment as to all claims against it on the ground that it was not Tomassi's employer at the time of any of the alleged discriminatory conduct.

## III.

### A. Age Discrimination Claims

Tomassi alleges that Insignia and Met-Life should be held liable under the ADEA, the NYSHRL and the NYCHRL for terminating her employment due to her age. As New York courts require the same standard of proof for claims brought under the NYSHRL and the NYCHRL as for those brought under the ADEA, Tomassi's federal and state claims will be analyzed together. *See Seltzer v. Dresdner Kleinwort Wasserstein*, 356

F.Supp.2d 288, 296 (S.D.N.Y.2005); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 565 n. 1 (2d Cir.2000).

■ The ADEA makes it unlawful "for an employer to ... discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To have an actionable claim under the ADEA, Tomassi must first establish a prima facie case of unlawful age discrimination. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir.1997). To establish a prima facie case, Tomassi must show that: (1) she was within the protected age group; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the action took place under circumstances giving rise to an inference of discrimination. *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir.2000). The burden of proof for establishing a prima facie case of discrimination under the ADEA is minimal. *Id.*

■ If Tomassi establishes a prima facie case, a rebuttable presumption of age discrimination arises and the burden of production shifts to Insignia and MetLife to show that there was a legitimate, non-discriminatory reason for the termination. *See Stratton v. Dept. for the Aging for the City of New York*, 132 F.3d 869, 870 (2d Cir.1997). If a legitimate, non-discriminatory reason is given for the termination, then the presumption of discrimination is rebutted and it "simply drops out of the picture." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 510–511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Tomassi then must show, without the benefit of a presumption, that her "age was the real reason for [her] discharge." *Schnabel*, 232 F.3d at 87.

Tomassi carries the minimal burden of establishing a prima facie case of discrimination under the ADEA. She was 63 years old when she was fired so she falls within the protected age group. 29 U.S.C. § 631(a) (limiting prohibitions of ADEA to individuals at least 40 years old). She was qualified for the position because she was employed as a supervisor in the Resident Services Department for more than three years, she received multiple salary raises and a promotion, and Insignia kept Tomassi on as an employee after it took over operations at PCV/ST. *See Gregory v. Daly,* 243 F.3d 687, 696 (2d Cir.2001) (inference of minimal qualification not difficult to draw where employer hired employee and termination is at issue); *Powell v. Syracuse Univ.,* 580 F.2d 1150, 1155 (2d Cir.1978) (an employee "only needs to demonstrate that [she] possesses the basic skills necessary for performance of the job."). Tomassi suffered an adverse employment action because her employment was terminated. *See Cordoba v. Beau Deitl & Assoc.,* No. 02 Civ. 4951, 2003 WL 22902266, at *7 (S.D.N.Y. Dec.8, 2003). Finally, the fact that her responsibilities were taken over by a newly-hired 25–year-old is enough to warrant the inference—at the prima facie stage—that Tomassi was the victim of age discrimination. *See id.* (terminating an employee in the protected age group while retaining a 27 year old and 34 year old is enough to warrant the inference that the plaintiff was the victim of age discrimination); *see also Tarshis v. Riese Org.,* 211 F.3d 30, 38 (2d Cir.2000) (holding inference is warranted when a 67 year old is replaced by a 59 year old).

However, Insignia and MetLife can rebut Tomassi's prima facie case by "articulat[ing]—but ... not prov[ing]" a non-discriminatory reason for her termination. *Fisher v. Vassar College,* 70 F.3d 1420, 1433 (2d Cir.1995). Insignia and MetLife do provide such a legitimate, non-discriminatory reason because Stadmeyer believed Tomassi could not process resident complaints efficiently, Tomassi's duties were reduced, Tomassi's work was reassigned to other employees because she was unable to complete it, and Tomassi violated Insignia's corporate policy for communicating with the media. Insignia did not immediately fire Tomassi when her ability to complete her assigned tasks came into question; they gave her the opportunity to improve by reorganizing her department, gradually reducing her job responsibilities, and finally bringing in other people to take over some of her work.

Because Insignia and MetLife articulated a legitimate, non-discriminatory reason for firing Tomassi, the burden shifts back to Tomassi to present sufficient evidence for a reasonable jury to conclude that Insignia and MetLife discriminated against her because of her age. Tomassi must show both that Insignia's legitimate, non-discriminatory reason was a pretext and that the pretext was used to hide age discrimination. *Hollander v. Am. Cyanamid Co.,* 172 F.3d 192, 200 (2d Cir.1999). "Absent discrimination, 'the employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, so long as its action is not for a discriminatory reason.'" *Mohamed v. Marriott Int'l, Inc.,* 905 F.Supp. 141, 151 (S.D.N.Y.1995) (quoting *Nix v. WLCY Radio/Rahall Communications,* 738 F.2d 1181, 1187 (11th Cir.1984)). However, "greater caution must be exercised in granting summary judgment in employment discrimination cases where the employer's intent is genuinely at issue," *Campbell v. Alliance Nat'l, Inc.,* 107 F.Supp.2d 234, 239 (S.D.N.Y.2000), as "employers are rarely so cooperative as to include a notation in the personnel file that the firing is for a reason expressly forbidden by law" *Bickerstaff v. Vassar College,*

196 F.3d 435, 438 (2d Cir.1999) (internal quotation marks and citation omitted); but "it is not enough to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 520 U.S. 133, 146–47, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

■ Although a reasonable jury could conclude, based on the evidence, that Insignia and MetLife's stated explanation is pretext, Tomassi does not provide sufficient evidence for a reasonable jury to conclude she was more likely than not fired on the basis of her age. She alleges that Stadmeyer, the Insignia general manager who fired her, alluded to her age as a justification for termination by saying things at the time of her termination such as she "probably didn't want to work long hours anymore" and that she could work with seniors because she "got along well" with them and "could relate" to them. (Tomassi Rule 56.1 Statement, ¶ 15) Tomassi further alleges that Stadmeyer commented on how well she got along with the senior residents and whether she thought about retiring once a month or once every two months. (Compl.¶ 24) Such comments are nothing more than stray remarks, which have been held not to be a sufficient evidence to support age discrimination claims. *See Bern v. United Mercantile Agencies*, 942 F.Supp. 217, 219–20 (S.D.N.Y.1996) ("Many courts have held that stray remarks in the workplace, by themselves, and without a demonstrated nexus to the complained of personnel actions will not defeat the employer's summary judgment motions.")

Stadmeyer's occasional comments to Tomassi regarding retirement and whether she could keep up with the workload are comparable to, if not less offensive than, comments that have been held previously to be stray remarks. For example, a plant manager's statements that the work force "was older, had been around too long, made too much money and enjoyed too many benefits" and that the company needed "new young people" was not enough to overcome the employer's articulation of a legitimate, non-discriminatory reason for the employee's discharge. *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir.1994); *See also, Spence v. Maryland Casualty*, 803 F.Supp. 649 (S.D.N.Y. 1992), *aff'd.* 995 F.2d 1147 (2d Cir.1993) (holding "over the hill" to be stray remark); *Seltzer*, 356 F.Supp.2d at 298 (finding comment "if you were 20 years younger and blonde, and beautiful, you'd get [a bracelet]" was a stray remark); *Pasha v. William M. Mercer Consulting*, No. 00 Civ. 8362, 2004 WL 188077, at *5 (S.D.N.Y. Feb.2, 2004) (no finding of age discrimination where supervisors talk about recruiting younger people and supervisor told plaintiff that they should be thinking of retirement at their age).

Stating that someone within the employee's protected group will better understand that employee, as Stadmeyer did when he said that Tomassi relates well to senior residents, is also a stray remark. *de la Cruz v. New York City Human Res. Admin.*, 82 F.3d 16, 22 (2d Cir.1996) (holding "Hispanic supervisor will understand you better" to be stray remark). Furthermore, Stadmeyer's alleged discriminatory statements to Tomassi regarding her abilities to relate and work with seniors are especially innocuous, because Tomassi herself believed she "was an advocate for seniors" and she had been trying to renovate the senior lounge. (Tomassi Dep. at 91) Thus, Stadmeyer's comments regarding her ability to communicate with seniors and her future career options working with seniors cannot be considered evidence of discriminatory motivation.

Additionally, Tomassi's reliance on Stadmeyer's admission that he falsely told her she was being fired because she did not have website experience as evidence that he must have had a discriminatory intent is misplaced. (Plaintiff's 56.1 Statement ¶ 46) "[D]iscrimination does not lurk behind every inaccurate statement. Individual decision-makers may intentionally dissemble in order to hide a reason that is non-discriminatory but unbecoming or small-minded ... the fact that the proffered reason was false does not necessarily mean that the true motive was the illegal once argued by the plaintiff." *Fisher*, 114 F.3d at 1337–38. Stadmeyer's decision to lie to Tomassi about the reason for her termination may not have been the wisest course, but that alone does not translate into an illegal motive, particularly when he stated that she was actually fired for the legitimate reason that she could not efficiently fulfill her duties.

Tomassi's task in illustrating that the reason for her termination was more likely than not discriminatory is especially difficult, because Stadmeyer, the supervisor who terminated her, also gave her positive evaluations, promoted her, and granted her salary raises. *See Connell v. Consol. Edison Co. of New York, Inc.*, 109 F.Supp.2d 202, 210 (S.D.N.Y.2000) ("Because the same people who approved an incentive award for plaintiff only the year before made the decision to discharge him, this factor also suggests that discrimination was not a cause of his layoff."); *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir.1997) ("Some factors strongly suggest that invidious discrimination was unlikely. For example, where the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."); *Ali v. Tribune Entm't Co.*, No. 93 Civ. 1398, 1996 WL 384913, at *8 (S.D.N.Y. July 10, 1996) ("An additional factor weighing in favor of summary judgment ... is that ... the same individuals who approved the plaintiff's promotion and raise in June 1990, terminated the plaintiff's employment on July 7, 1991.") The fact that Stadmeyer promoted Tomassi a year and a half before he fired her and provided her with a 5.7 percent salary increase four months before firing her weighs heavily against there being a discriminatory reason for termination.

Although Tomassi is able to state a prima facie case of age discrimination, she is unable to illustrate that Insignia's legitimate, non-discriminatory reason for terminating her employment was a pretext for an underlying age motivation. All of the allegedly discriminatory comments made to her were nothing more than stray remarks, and such remarks were made by the same supervisor who promoted her and raised her salary. Thus, her claims under the ADEA, NYSHRL and NYCHRL for age discrimination must fail because she was terminated due to her unsatisfactory job performance.

## B. Gender Discrimination Claims

Tomassi alleges that Insignia and MetLife should be held liable under Title VII, the NYSHRL, and the NYCHRL for gender discrimination and sexual harassment due to the presence of a hostile workplace. As New York courts require the same standard of proof for claims brought under the NYSHRL and the NYCHRL as for those brought under Title VII, Tomassi's federal and state claims will be analyzed together. *See Dawson v. Bumble & Bumble*, 398 F.3d 211, 217 (2d Cir.2005); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 n. 1 (2d Cir.2000).

Title VII prohibits employers from discriminating against any individual "with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." 42 U.S.C. § 2000e–2(a)(1). To have an actionable claim under Title VII, Tomassi must show that "harassment on [the basis of sex] amounted to a hostile work environment." *Feingold v. New York*, 366 F.3d 138, 149 (2d Cir.2004). To have a valid claim for a hostile work environment against her employer, Tomassi's workplace must be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). To withstand a summary judgment motion, Tomassi must establish that (1) the harassment was so severe as to alter the terms and conditions of her employment, and (2) there is a basis for imputing the harassing conduct to the employer. *Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 62 (2d Cir. 1998).

Harassing conduct by a supervisor toward an employee can be imputed to the employer even though, as here, no direct employment action was taken against that employee as a result of her gender. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). However, when the supervisor takes no tangible employment action, the employer can raise an affirmative defense to liability. *Id.* To raise this affirmative defense, the employer must prove by a preponderance of the evidence that (1) "[it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior" and (2) the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Id.*

First, Insignia did exercise reasonable care to prevent and correct any sexually harassing behavior. Insignia does not have to prove that it successfully prevented harassing behavior to show that it exercised reasonable care, and "the existence of an anti-harassment policy with complaint procedures is an important consideration in determining whether the employer has satisfied the first prong of this defense." *Caridad v. Metro–North Commuter R.R.*, 191 F.3d 283, 245 (2d Cir. 1999). Insignia had an anti-harassment policy with a sexual harassment complaint procedure publicized in its Employee Handbook, which was distributed to all employees, including Tomassi. Furthermore, Insignia held a Sexual Harassment Awareness and Prevention Training Seminar, which Tomassi attended. In both the Handbook and the Training Seminar, employees were instructed to report any discriminatory conduct to their supervisor, or if they did not feel that was appropriate, to report it to a department manager, human resource representative, or the Senior Vice President of Human Resources. (Defendant's Notice of Motion, Ex. B at 8) Furthermore, Insignia had an human resources hotline through which employees could report discriminatory conduct. (*Id.*) Thus, Insignia exercised reasonable care. However, Tomassi failed to take advantage of any of these preventative and corrective opportunities because she never reported any of Stadmeyer's conduct to anyone at Insignia and never made use of the hot line. (Tomassi Depo. 77)

Once an employer demonstrates that the employee failed to make use of the complaint procedure, then the burden shifts to the employee to articulate why she did not use the procedure. *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245

(2d Cir.2001). An unreasonable failure to use any complaint procedure "will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher*, 524 U.S. at 807–808, 118 S.Ct. 2275. For a failure to use a complaint procedure to be reasonable, the reluctance to report the harassment "must be based on apprehension of what the employer might do," such as a credible fear that the complaint would not be taken seriously or that the employee would have faced adverse employment action. *Caridad*, 191 F.3d at 295. The employee's fear must be substantiated by evidence showing "that the employer ignored or resisted similar complaints or has taken adverse actions against employees in response to such complaints." *Leopold*, 239 F.3d at 246.

Tomassi stated that she did not make use of Insignia's sexual harassment complaint procedure because she "had a job she liked" and she "didn't want to appear not to be a team player." (Tomassi Dep. at 77) She does not provide any evidence that she was afraid her complaint would be ignored or that she would face adverse employment action if she reported Stadmeyer. Nor does she provide any evidence that Insignia ignored or resisted sexual harassment complaints brought by employees or that it took adverse employment actions against employees who reported sexual harassment. Insignia exercised reasonable care to prevent and correct any sexually harassing behavior, and Tomassi unreasonably failed to take advantage of Insignia's complaint procedure. Insignia has a valid affirmative defense to Tomassi's sexual harassment and gender discrimination claims and summary judgment with respect to those claims is granted.

C. Claims Against MetLife

■■■■ Even if Tomassi was able to assert an actionable claim for age or gen-der discrimination, all of her claims against MetLife are invalid. Tomassi was not directly employed by MetLife during the time in which she alleges Stadmeyer engaged in discriminatory conduct, and Stadmeyer was at all times employed only by Insignia. Thus, the issue is whether Insignia was sufficiently integrated with MetLife so that they "were operating as joint employers with respect to the plaintiff." *Woodell v. United Way of Dutchess County*, 357 F.Supp.2d 761, 767 (S.D.N.Y.2005). The "integrated enterprise approach" is used to determine whether a defendant is an employer under the employment discrimination statutes, including Title VII and the ADEA; under this approach the court determines whether "two entities are so interrelated that they may be treated as single employer" allowing an employee to "hold two or more nominally separate business entities accountable as a single entity under anti-discrimination laws." *Woodell*, 357 F.Supp.2d at 767 (citations and quotation marks omitted). Under the integrated enterprise approach, four factors influence the determination: (1) interrelated operations; (2) common management; (3) centralized control of labor relations; and (4) common ownership, between two entities. *Id.* Generally, a defendant will be considered an employer "where there is sufficient evidence that a defendant had immediate control over another company's employees, and even more importantly, over the particular employee alleging discrimination." *Id.* (citation and quotation marks omitted) (holding defendant was not a joint employer because, among other things, there was no common management, no centralized control of daily labor relations, and no demonstration that it reviewed or fired defendant or played any role in making those decisions).

■■■■ MetLife had no control over the evaluations of Tomassi's work or the decision to fire Tomassi. Although Tomassi was employed by MetLife from February

2000 through April 2001 and MetLife continues to own the PCV/ST property, as of May 1, 2001, she become employed solely by Insignia. Stadmeyer was employed solely by Insignia and was never a MetLife employee. Tomassi states that the alleged discrimination began after Insignia's May 2001 takeover of the management of PCV/ST. MetLife does maintain some control over Insignia's management decisions at PCV/ST; for example, Tomassi stated in her deposition that MetLife had a liaison assigned to PCV/ST, she copied MetLife on memoranda regarding events at PCV/ST, and MetLife had representatives attend meetings dealing with marketing and construction. (Tomassi Dep. at 107–108) However, Tomassi provides no evidence that MetLife controlled labor relations at Insignia, that MetLife and Insignia have common management, that MetLife reviewed or fired Tomassi, or that it played any role in decisions regarding her employment. Insignia's general manager averred that "After May 1, 2001, while MetLife continued to be involved with PCV/ST from a financial investment standpoint, including the need to review significant capital expenditures or other events, it was not involved in the day-to-day management of PCV/ST." (Wenzel Aff. ¶ 9)

Thus, as MetLife is involved with the activities of Insignia only to the extent they impact MetLife's financial investment in the property, it is not an employer of Tomassi under the integrated approach and cannot be held liable on any of her discrimination claims.

\* \* \* \* \* \*

For the reasons set forth above, defendants' motion for summary judgment is granted.

SO ORDERED.