Patricia McCarthy TOMASSI,
Plaintiff–Appellant,

v.

INSIGNIA FINANCIAL GROUP, INC.
and Insignia Residential Group,
Inc., Defendant–Appellees,

Metlife, Inc., Defendant.

Docket No. 05–6219–CV.

United States Court of Appeals,
Second Circuit.

Argued: May 19, 2006.

Decided: Feb. 16, 2007.

Christopher P. Kelly, Reppert Kelly, LLC, Basking Ridge, NJ, for Plaintiff-Appellant Patricia McCarthy Tomassi.

Douglas E. Rowe, Certilman Balin Adler & Hyman, LLP, for Defendant–Appellees Insignia Financial Group, Inc. and Insignia Residential Group, Inc.

Before LEVAL, CALABRESI, and FRIEDMAN,* Circuit Judges.

* The Honorable Daniel M. Friedman, United States Circuit Judge for the Federal Circuit, sitting by designation.

LEVAL, Circuit Judge.

Plaintiff Patricia Tomassi appeals from the grant of summary judgment by the United States District Court for the Southern District of New York (Mukasey, *C.J.*) in favor of Insignia Financial Group, Inc. and Insignia Residential Group, Inc. (collectively, "Insignia"), dismissing her age-discrimination claims. The court found the evidence insufficient to support a plaintiff's verdict. It characterized age-related remarks made by plaintiff's superior as "stray," and consequently disregarded them. For the reasons stated below, we vacate the judgment and remand for further proceedings.[1]

### Background

In February 2000, when Tomassi was 60 years old, MetLife, Inc. hired her as Supervisor of Resident Services for the Peter Cooper Village and Stuyvesant Town housing complexes ("PCV/ST"), which MetLife owned. PCV/ST is a residential apartment complex in Manhattan comprising approximately 11,000 rental units. As Supervisor of Resident Services, Tomassi handled resident service requests and managed approximately 20 employees.

In 2001, MetLife outsourced the management of the PCV/ST complex to Insignia. On May 1, 2001, Tomassi ceased to be an employee of Met Life and became an employee of Insignia, retaining the title of Supervisor of Resident Services. In her new employment at Insignia, her supervisor was Steve Stadmeyer.

Tomassi testified to the effect that throughout the course of her employment with Insignia, Stadmeyer made frequent references to her age. Stadmeyer would begin sentences with "In your day and age . . ." and suggest that Tomassi related well to and "could understand the mentality of" PCV/ST's senior residents. Stadmeyer also repeatedly asked Tomassi whether she would be better off retiring so that she could "take time off to rest." According to Tomassi's deposition testimony:

> [H]e would ask me if I ever thought about retiring. He would ask me if I thought I could keep up with some of the work. He asked me if I was tired of working. . . . [W]asn't it time to retire, did I ever think about retiring. Tired of the commute.

Tomassi asserted that Stadmayer made such age-related comments to her "once a month, [or] once every couple [of] months."

In the fall of 2001, Insignia began a project to draw young professionals to PCV/ST. To attract this new, younger clientele, Stadmayer made a point of hiring "younger, energetic, . . . attractive" employees. At the same time, Insignia instituted a policy to encourage better communication between management and residents. Stadmeyer promoted Tomassi to Director of Resident Services and Community Affairs, giving her responsibility for overseeing all internal and external communications. She also became responsible for handling community affairs and public relations matters, such as managing PCV/ST's senior center, handling community programs, and working with local politicians. Her salary was increased from approximately $59,000 per year to $65,000 per year in October 2001 and to $70,000 in early 2002, and she received a $7,500 performance bonus in April 2002.

In July 2002, the Resident Services Group and the Operations Department

---

1. Tomassi also asserted claims of gender discrimination and named Metlife, Inc. as an additional defendant. The district court granted summary judgment in favor of all the defendants on all claims. Tomassi has appealed only as to the age-discrimination claims against Insignia.

were combined, so that Tomassi no longer retained supervisory responsibility over Resident Services. This change in job function was not related to Tomassi's on-the-job performance. According to Stadmeyer, she "continued to be responsible for addressing the more complicated tenant complaints, in both oral and written form, based upon the perception that she was adept at this function." A Professional Annual Performance Appraisal of Tomassi written by Stadmeyer in November of 2002 stated that Tomassi met or exceeded expectations in every performance category, but also noted that she "needs improvement in quantity" of work and that "sometimes jobs take too long."

In late 2002 and early 2003, Stadmeyer testified, he began to hear that Tomassi was not addressing tenants' complaints sufficiently promptly. To help with the workload, Stadmeyer hired an administrative assistant for her. Despite his instruction to prepare written responses to unresolved tenant complaints within one week, and despite Tomassi's assurance that she would "not have any difficulty" completing the assignment, Tomassi, according to Stadmeyer, had still not resolved the complaints a month later. He therefore reassigned responsibility for addressing these complaints to another worker, rendering Tomassi's responsibilities "essentially . . . negligible."

Tomassi acknowledged that Stadmeyer met with her to discuss his concern that tenants' complaints were not being answered sufficiently swiftly. She maintained however, that Stadmeyer directed that the complaints be resolved "by the end of the year," which they were. She testified also that Stadmeyer regularly praised her handling of the job, and that the volume of complaints and the logistical difficulties involved in resolving them created "too much [work] for one person to

do." To cut down her response time, Tomassi says she called the complaining residents directly, "which seemed to be fine." She denied that responsibility for handling tenant complaints was ever taken away from her. In January 2003, Tomassi received another salary increase, raising her salary to $74,200.

In February 2003, an explosion occurred in one of the PCV/ST buildings. Tomassi was assigned the task of overseeing the relocation of about 15–20 families who were displaced by the explosion, which involved working in conjunction with, among others, MetLife Corporate Relocation, the American Red Cross, the New York City Department of Emergency Management, and the New York City Building Department. Stadmeyer testified that after several days he decided Tomassi was not effectively performing her duties in a timely manner, and he reassigned the job to another staff member. Tomassi asserted that all families affected by the explosion were ultimately relocated and denied that her responsibilities were reassigned.

On May 7, 2003, Stadmeyer told Tomassi that she was no longer needed at Insignia because he had hired someone with website experience to take over her responsibilities. Tomassi testified that Stadmeyer said to her, "Well, Pat, you know, I figure that you probably didn't want to work long hours any more and you would be happier doing something part-time. You have money. You're independently wealthy. So I just figured that it would be better for you." When Tomassi responded that she was not wealthy and needed full-time work, Stadmeyer replied, "Well, you know, you get along with the seniors. I figured maybe you could do some work with the seniors." Stadmeyer offered to provide Tomassi with a reference, praising her "great skills" and "great ability." Stadmeyer testified that, in fact, he had

not fired Tomassi because he needed someone with website experience, as he told her, but rather because Tomassi was not performing her tasks effectively and efficiently, and in addition, because Tomassi had violated Insignia's policy on communicating with the media.

Tomassi's last day of employment was May 19, 2003, at which time she was 63 years old. Insignia had hired a 25–year-old, Saskia Witkam, who was assigned responsibility for communicating with tenants, producing a tenant newsletter, managing the PCV/ST website, and handling public relations. Stadmeyer maintains that Witkam was hired "because she had substantial graphic computer background and experience with maintaining websites." He also says that Witkam did not replace Tomassi, but rather was hired to fill a "new position" and was assigned only a small portion of tasks for which Tomassi had been responsible, in particular the handling of tenant notices. Tomassi contests this characterization and argues that at the time of her termination she was responsible for, among other things, "preparing and sending out tenant notices ..., preparing the PCV/ST newsletter, assisting with the web site, ... [and] public relations and communications"—precisely the tasks then assigned to Witkam.

Tomassi brought this suit alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), claiming that she was fired "on account of her age and because she did not fit into the younger, fresher image that defendants were striving to achieve for PCV/ST."[2]

The district court granted the defendants' motion for summary judgment, concluding there was insufficient evidence to support a reasonable finding that Tomassi was fired on account of her age. *Tomassi v. Insignia Fin. Group, Inc.*, 398 F.Supp.2d 263 (S.D.N.Y.2005). The court considered Stadmeyer's age-based comments as "nothing more than stray remarks, which have been held not to be ... sufficient evidence to support age discrimination claims." *Id.* at 271.

## Discussion

■ Because Tomassi satisfied the "de minimis" requirements of a *prima facie* case of age discrimination and Insignia proffered a different reason for her termination, the pattern of presumptions and burden shifts established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), drops away, and the question in adjudicating the defendants' motion for summary judgment becomes simply whether the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that her dismissal was motivated at least in part by age discrimination.[3] *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142–43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 75 L.Ed.2d 403

**2.** The Complaint also asserted claims for sex discrimination and harassment in violation of Title VII of the Civil Rights Act of 1964, NYSHRL, and NYCHRL based on allegations not relevant to the present appeal.

**3.** Because age-discrimination claims under the ADEA, NYSHRL, and NYCHRL are ana-

lyzed under the same standard, *see Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir.2001), and the district court undertook to adjudicate the state law claims along with federal law claims, we analyze all of Tomassi's claims together.

(1983); *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 52 (2d Cir.1998); *Fisher v. Vassar Coll.,* 114 F.3d 1332, 1336 (2d Cir.1997) (en banc), *abrogated on other grounds by Reeves,* 530 U.S. at 140, 120 S.Ct. 2097; *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1112 (2d Cir.1988). The district court believed the evidence was insufficient. The court attributed no significance to Stadmeyer's numerous comments on Tomassi's age because it classified them as "stray remarks," and noted that stray remarks "have been held not to be ... sufficient evidence to support age discrimination claims." *Tomassi,* 398 F.Supp.2d at 271. In so classifying Stadmeyer's remarks, the court further observed that they were "comparable to, if not less offensive than, comments that have been held previously to be stray remarks." *Id.* We believe the court misunderstood what we have said in prior cases about so-called "stray remarks." Considering Stadmeyer's remarks in the context of all the evidence, they were legally sufficient to sustain a reasonable inference that he was motivated by age discrimination in terminating Tomassi.

In ruling that Stadmeyer's remarks lacked evidentiary significance because they were "stray," the court failed to apply the correct standard. Instead of disregarding some of the evidence because of such a classification, the court should have considered all the evidence in the light most favorable to the plaintiff to determine whether it could support a reasonable finding in the plaintiff's favor.

■ We recognize that our precedents may have been somewhat confusing. In some instances we have found the evidence legally insufficient notwithstanding the incidence of discriminatory remarks. To explain why the evidence was nonetheless insufficient, we noted that the remarks were "stray." That locution represented an attempt—perhaps by oversimplified generalization—to explain that the more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination. For example, remarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark. *See, e.g., Ostrowski v. Atl. Mut. Ins. Cos.,* 968 F.2d 171, 182 (2d Cir.1992) (describing remarks as "stray" when made "in the workplace by persons who are not involved in the pertinent decisionmaking process"); *cf. Rose v. New York City Bd. of Educ.,* 257 F.3d 156, 162 (2d Cir.2001) (contrasting "the stray remarks of a colleague" with "comments made directly to" the plaintiff by someone with "enormous influence in the decision-making process"). The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be. *See Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 56 (2d Cir.1998) (explaining that the label "stray" is inappropriate where "other indicia of discrimination" tie the remarks to an adverse employment action); *compare Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 162–63 (2d Cir.1998) (rejecting the label "stray" where decision-makers uttered age-related remarks near the time of plaintiff's discharge), *with Slattery v. Swiss Reinsurance Am. Corp.,* 248 F.3d 87, 92 n. 2 (2d Cir.2001) (characterizing remarks as "stray" where they were "unrelated to [the plaintiff's] discharge"). Where we described remarks as "stray," the purpose of doing so was to recognize that all comments pertaining to a protected class are not equally probative of discrimination and to explain in generalized terms why the evidence in the particular

case was not sufficient. We did not mean to suggest that remarks should first be categorized either as stray or not stray and then disregarded if they fall into the stray category.

■ The district court was also mistaken in the view that the probative value of Stadmeyer's remarks depended on how offensive they were. The relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class. Inoffensive remarks may strongly suggest that discrimination motivated a particular employment action.[4] For example, Stadmeyer's assertion to the effect that Tomassi was well suited to work with seniors was not offensive. Nonetheless, it had a strong tendency in the circumstances to show that Stadmeyer believed that, because of Tomassi's age, she was not well suited to deal with the younger tenants Stadmeyer was hoping to attract.

Finally, we do not understand why the district court characterized Stadmeyer's remarks as stray. The remarks were made by the person who decided to terminate Tomassi. They could reasonably be construed, furthermore, as explaining why that decision was taken. A jury could reasonably construe Stadmeyer's remarks, in all the circumstances, as persuasive evidence that Stadmeyer believed a younger person would be better suited to attract a young clientele to PCV/ST and that he replaced Tomassi for that reason. We recognize that the defendant attributes Stadmeyer's dissatisfaction not to Tomassi's age, but to her increasingly slow and deficient job performance. It is perfectly possible that the defendant's explanation is the correct one. Nonetheless, it is our obligation at this stage to interpret ambiguities in the evidence in the light most favorable to the plaintiff.

Tomassi's evidence included that (1) Stadmeyer made age-related remarks to Tomassi every month or so; (2) he hired younger employees while seeking to attract a younger clientele to PCV/ST; (3) he affirmed the quality of Tomassi's job performance, evidenced by the promotion, raises, and praise she received throughout her employment, including praise at the time of her firing[5]; (4) Stadmeyer made age-related comments at Tomassi's firing, especially to the effect that she was well suited to work with seniors; and (5) she was replaced by a worker 38 years younger. We see no reason why the jury could

4. Age discrimination is unlike other discrimination in that it is undeniable that a person's faculties deteriorate with time. Nonetheless, while age will eventually cause deterioration in everyone, some people retain their faculties longer than others. The ADEA does not prohibit the making of adverse employment decisions based on an employee's loss of faculties through the process of aging. Rather, the ADEA requires the decision-maker to treat each individual case on its merits, rather than assume that at a certain age deterioration has occurred. *See Danzer,* 151 F.3d at 54–55 (indicating that deterioration of job performance is an acceptable age-neutral justification for termination).

5. We take issue with the district court's argument that because Stadmeyer "gave [Tomassi] positive evaluations, promoted her, and granted her salary raises," he was unlikely to have fired her because of her age. *Tomassi,* 398 F.Supp.2d at 272. First, Tomassi's promotion, pay raises, and positive evaluations cut directly against the legitimate, non-discriminatory justification that Stadmeyer has offered for her termination. Stadmeyer claimed in his deposition and post-deposition affidavit that his decision to fire her was based on her poor job performance—an argument strongly undermined by evidence that she was a well-regarded employee. Second, the notion that Tomassi's work was esteemed by Stadmeyer is not necessarily inconsistent with her account of his actions. Tomassi argues that Stadmeyer fired her, not because of her work performance, but because he decided that a younger face would attract a

not reasonably find, on the basis of the evidence, that Stadmeyer was motivated by age discrimination in terminating Tomassi. The evidence in the aggregate raises a triable question as to whether Stadmeyer's actions were motivated by age.[6]

### Conclusion

The judgment dismissing the age-discrimination claims against Insignia is VACATED, and the case is remanded for further proceedings.

more-desirable demographic to PCV/ST. Evidence showing he thought highly of Tomassi's work does not contradict this claim. Thus, Tomassi's promotion, pay raises, and positive evaluations are more consistent with her contentions than with the defendant's.

**6.** Defendant has not argued, either in support of its motion for summary judgment or on appeal, that it would have been justified under the ADEA in preferring a younger employee to attract a younger clientele. That issue is not before us, and we have not considered it.

