22-680
*Lee v. Grocery Haulers, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of November, two thousand twenty-three.

PRESENT:

> SUSAN L. CARNEY,
> RICHARD J. SULLIVAN,
> EUNICE C. LEE,
> > *Circuit Judges.*

_____

ROBERT LEE,

> *Plaintiff-Appellant,*

> v.                                                                No. 22-680

GROCERY HAULERS, INC.,

> *Defendant-Appellee.*[*]

_____

_____

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

For Plaintiff-Appellant:             JOHN T. BOCHANIS, Daly, Weihing &
                                     Bochanis, LLC, Bridgeport, CT.


For Defendant-Appellee:              ADAM J. LYKE (Glenn A. Duhl, *on the
                                     brief*), Zangari Cohn Cuthbertson
                                     Duhl & Grello P.C., New Haven, CT.


Appeal from a judgment of the United States District Court for the District of Connecticut (Janet Bond Arterton, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Robert Lee, an African American truck dispatcher, appeals the district court's grant of summary judgment in favor of his employer, Grocery Haulers, Inc. ("GHI"), on his federal and state claims for discrimination and retaliation, and his state claim for promissory estoppel. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review a district court's grant of summary judgment de novo. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). Summary judgment is appropriate if, "drawing all inferences in favor of the nonmoving party[,] . . . there is no genuine issue as to any material fact and . . . the movant is entitled to

judgment as a matter of law." *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010) (internal quotation marks omitted).

## I. DISCRIMINATORY-TERMINATION CLAIM

When evaluating discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012). "Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014). To establish a prima facie case of discrimination under Title VII, a plaintiff must show that "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to [an] inference of discrimination." *Ruiz*, 609 F.3d at 492.

Here, Lee does not establish a prima facie case of discrimination relating to his termination because he proffered insufficient evidence that "the adverse action" at issue – his termination – "took place under circumstances giving rise to [an] inference of discrimination." *Id.*

Although Lee asserts that another GHI dispatcher, Richard Bocca, made racially disparaging remarks and discriminated against Black and Latino drivers by giving them less desirable trucking routes, Lee failed to show that he (or anyone else) informed his supervisors at GHI – Tim Hagan, Jim Mulcahey, and Brian Bender – of Bocca's discriminatory conduct, or that it bore on his supervisors' decision to terminate him. Nothing in the record suggested that the supervisors who fired Lee shared Bocca's animus or otherwise discriminated against Lee. And since Bocca himself was not a decisionmaker with authority to discharge Lee,[1] we conclude that no reasonable juror could draw an inference of discrimination on the part of the GHI supervisors who actually did the firing. *See Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007), *abrogated on other*

_____

[1] Lee argues otherwise, asserting that "[m]aterial questions of fact were also presented as to whether Mr. Bocca was a 'decision maker[.]'" Lee Br. at 33. We agree with the district court that, even if Bocca had been involved with the decision to terminate other employees, Lee has not adduced any evidence to support the inference that Bocca "played a role in *his* termination." *Lee v. Grocery Haulers, Inc.*, No. 20-cv-523 (JBA), 2022 WL 743087, at *4 (D. Conn. Mar. 11, 2022) (emphasis in original).

4

*grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009) ("[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by . . . discriminatory sentiment").

Lee nevertheless points to his deposition testimony that he told Hagan about "[an] incident[] that took place between [him] and Mr. Bocca," J. App'x at 271, and argues that the "close temporal connection" between his report of the incident and his termination supports an inference of discrimination. Lee Br. at 33. When asked to identify the incident that he purportedly reported, Lee testified that he was referencing "the incident when [Bocca] came to the office, . . . throwing things around [and making a statement] about [Lee's] people only being good for working in the fields." J. App'x at 271. But while this testimony indicates that Lee generally reported to Hagan that this *incident* with Bocca had occurred, it does not demonstrate that Lee conveyed to Hagan the *racially charged language* or *discriminatory nature* of the incident. Indeed, despite multiple attempts by counsel to elicit from Lee what was said about the incident, Lee never recounted the words or substance of what he told his supervisors. *See, e.g., id.* at 267–68 (Lee stating repeatedly that he reported "an issue" with Bocca, but equivocating as to whether

5

he told Hagan about Bocca's racially discriminatory remarks); *id.* (Lee refusing to clarify what "issue" he relayed to Hagan and whether he told Hagan about Bocca's discriminatory conduct); *see also id.* at 270 (Lee testifying that "[he] and Mr. Bender had talked about that issue with [Lee] and Mr. Bocca," but never confirming whether he "communicate[d] to Mr. Bender . . . [the] racial activity by Mr. Bocca").

Lee similarly argues that an inference of discrimination can be drawn from other portions of his deposition testimony, in which he said he informed Mulcahey or Hagan that Bocca was changing the routes of "[B]lack and Latino" drivers in a discriminatory fashion. Lee Br. at 16–17, 30 (citing J. App'x at 271). But Lee stated in his deposition that he could not name a single driver who was affected by Bocca's conduct and did not dispute that, in his written and electronic communications with GHI, he relayed only his "displeasure [about] Bocca's changing [of] routes," without ever mentioning that "it was for racial reasons." *Id.* at 273–74.[2] At most, this testimony suggests discriminatory conduct on the part of

---

[2] The district court noted that Lee, elsewhere in his deposition testimony, identified a Latino man named Sergio Bran as having had his routes changed by Bocca because of his race or ethnicity. *Lee*, 2022 WL 743087, at *5. Because Bran submitted an affidavit stating that he "never thought that Richard Bocca or any other Grocery Haulers dispatcher changed driver routes because of the drivers' race or color," however, the district court concluded that Lee had failed to raise an inference of discriminatory animus. *Id.* Ultimately, this issue does not affect our analysis, because even if Bocca changed Bran's routes based on his race or ethnicity, Lee does not raise a triable issue of fact regarding any connection between Bocca's discriminatory conduct and the decision to fire Lee.

Bocca, who was at all times Lee's "co-worker[]," and not a supervisor with power to influence the adverse action at issue: his termination. *See Tomassi*, 478 F.3d at 115. Moreover, nothing in the record suggests that Mulcahey and Hagan were the ones who "unlawful[ly] harass[ed]" Lee or otherwise engaged in discriminatory conduct. *Id.*

Additionally, Lee relies on an affidavit attached to his opposition to GHI's motion for summary judgment, in which he represented that he told Mulcahey that Bocca "was making African American drivers drive longer and more strenuous routes," and "informed" Hagan of "the incident and actions of Mr. Bocca and requested a meeting with Human Resources to discuss the racial remarks and actions of Mr. Bocca." J. App'x at 33–34. But it is well-settled that a plaintiff cannot create an issue of material fact by supplementing prior deposition testimony with new, inconsistent, or contradictory information in an affidavit submitted in opposition to summary judgment. *See Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996); *see also Downey v. Adloox, Inc.*, 789 F. App'x 903, 907 n.1 (2d Cir. 2019).

With nothing in the record to indicate that Lee informed Hagan, Mulcahey, or Bender of Bocca's alleged racial discrimination – and in light of the evidence

7

showing that Bocca himself was only a "co-worker[]" and that the supervisors who were actually empowered to "ma[k]e the decision adversely affecting [Lee]" never discriminated against him, *Tomassi*, 478 F.3d at 115 – the district court properly concluded that no reasonable person could find on this record that Lee's termination gave rise to an inference of discrimination.[3]

## II. RETALIATION CLAIM

Lee's retaliation claim fails for the same reasons. As with discrimination claims, the *McDonnell Douglas* framework applies to claims of retaliation brought under Title VII. *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 208 (2d Cir. 1990). To establish a prima facie case at step one of that framework, Lee was required to show that (1) "he engaged in protected [activity] under Title VII," (2) "the employer was aware of this activity," (3) "the employer took adverse action against [him]," and (4) "a causal connection exists between the protected activity and the adverse action." *Id.* at 208–09. "Protected activity" refers to "oppos[ing] any practice made unlawful by Title VII" or "ma[king] a charge,

---

[3] The same is true for Lee's argument that the "disparate treatment" of Lee and Bocca raises an inference of discrimination. *See* Lee Br. at 30–31. As the district court noted, "the record lacks competent evidence that [Lee] reported Mr. Bocca's [racially charged] remark or that GHI knew . . . that [Lee] and Mr. Bocca engaged in conduct of 'comparable seriousness' but treated them differently." *Lee*, 2022 WL 743087, at *6. We are likewise unconvinced by Lee's argument that GHI's failure to impose "progressive discipline" displays discriminatory animus, particularly because Lee offers no evidence that GHI's failure was race-related in any way.

testif[ying], assist[ing], or participat[ing] . . . in formal EEOC proceedings" involving Title VII. *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015) (internal quotation marks omitted).

Here, Lee failed to establish a prima facie case of retaliation. Although reporting Bocca's racially charged actions and statements to his supervisors at GHI would generally constitute protected activity, Lee offered no evidence that he did so – much less that GHI was motivated to terminate him because of it. As described above, Lee said at his deposition that he recalled no specifics as to what he told Hagan, Mulcahey, and Bender – even though he was given many chances to offer details. *See Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (holding summary judgment to be proper where there is "nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony," and the district court, "even after drawing all inferences in the light most favorable to the plaintiff, determine[s] that no reasonable person could believe [the plaintiff's] testimony" (internal quotation marks omitted)). Further, Lee's affidavit, standing alone, cannot create a dispute of material fact as to whether he ever participated in a "protected activity." *See Hayes*, 84 F.3d at 619. Given Lee's equivocal testimony and his inability to establish

that he engaged in a "protected activity," or that his employer was even aware of any "protected activity" at the time of his termination, we agree with the district court that Lee failed to make out a prima facie case of retaliation under Title VII.[4]

## III.  PROMISSORY-ESTOPPEL CLAIM

Finally, with regard to Lee's promissory-estoppel claim, the district court properly concluded that summary judgment in favor of GHI was appropriate because the record raised no genuine dispute as to whether a promise made by GHI "induce[d] action or forbearance" on Lee's part. *Stewart v. Cendant Mobility Servs. Corp.*, 267 Conn. 96, 104 (2003) (internal quotation marks omitted). "To succeed on a claim of promissory estoppel, the party seeking to invoke the doctrine must have relied on the other party's promise," through either "action or forbearance" that "result[ed] in a detrimental change in the plaintiff's position." *Id.* at 112–13.

The present record contains no facts that support Lee's asserted form of forbearance, i.e., that he refrained from seeking other employment opportunities

---

[4] Claims under the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-51 *et seq.*, are analyzed in the same manner as those under Title VII. *See Brittell v. Dep't of Correction*, 247 Conn. 148, 164 (1998); *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010). As a result, we affirm the district court's grant of summary judgment on Lee's state-law discrimination and retaliation claims for the same reasons discussed above.

based on GHI's promise of gradual discipline.  Lee offers no evidence establishing, for example, that dispatchers like himself "frequently obtained" gainful employment "opportunities" at other companies or that Lee "forwent a signing bonus" by staying at GHI based on representations about the company's progressive-disciplinary policy and use of performance-improvement plans. *Id.* at 113–15.  Indeed, Lee identifies no job offers that he received from other companies, much less employment opportunities that he passed up to work at GHI.  He therefore has not shown that he detrimentally relied on GHI's statements, as required to prove his promissory-estoppel claim.  *See id.* at 113.

We have considered Lee's remaining arguments and find them to be without merit.  Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11