07-2721-cv
Sassaman v. Gamache

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2008

(Argued: December 10, 2008                    Decided: May 22, 2009)

Docket No. 07-2721-cv

CARL THOMAS SASSAMAN,

  *Plaintiff-Appellant*,

  v.

DAVID GAMACHE, COMMISSIONER, DUTCHESS COUNTY BOARD OF ELECTIONS, and
DUTCHESS COUNTY,

  *Defendants-Appellee*s.

Before: FEINBERG, CABRANES, and HALL, *Circuit Judges*.

Appeal from a judgment of the United States District Court for the Southern District of New York (Charles L. Brieant, *Judge*). The District Court determined, on defendants' motion for summary judgment, that plaintiff had failed to establish a *prima facie* case of sex discrimination because he had not identified evidence sufficient to support an inference of discrimination. We disagree. Plaintiff's evidence included: (1) his supervisor's statement indicating that men have a propensity to commit sexual harassment and (2) defendants' arguable failure to investigate properly the charges of sexual harassment lodged against plaintiff. This evidence would permit a reasonable jury to infer discrimination based on sex stereotyping. On this record, defendants are not entitled to summary judgment.

Affirmed with respect to the individual defendant, who is not subject to liability under Title

1

VII; vacated with respect to the other defendants; and remanded for further proceedings consistent with this opinion.

LANNY E. WALTER, Walter, Thayer & Mishler, P.C., Albany, NY, *for Plaintiff-Appellant.*

KAREN FOLSTER LESPERANCE, McCabe & Mack LLP, Poughkeepsie, NY, *for Defendants-Appellees.*

JOSÉ A. CABRANES, *Circuit Judge*:

In this Title VII action, plaintiff-appellant Carl Thomas Sassaman charges his former employer and supervisor—defendants-appellees David Gamache, Commissioner of the Dutchess County Board of Elections, the Dutchess County Board of Elections, and Dutchess County—with sex discrimination. Sassaman alleges that defendants pressured him to resign because of a sex stereotype regarding the propensity of men to sexually harass their female co-workers. The United States District Court for the Southern District of New York (Charles L. Brieant, *Judge*) granted defendants summary judgment on the grounds that Sassaman had not identified evidence sufficient to support an inference of discrimination and therefore had failed to establish a *prima facie* case of sex discrimination. On appeal, we consider whether a reasonable jury could infer discrimination based on sex stereotyping in light of Sassaman's evidence that his supervisor believed that men have a propensity to commit sexual harassment and defendants' arguable failure to investigate properly the charges of sexual harassment lodged against Sassaman. As explained in further detail below, we conclude that this evidence was sufficient to meet Sassaman's minimal burden of establishing a *prima facie* case of sex discrimination in violation of Title VII.

## BACKGROUND

Unless otherwise indicated, the facts set forth in this section are drawn from the record of the proceedings before the District Court and are not contested by the parties.

In early 2003, plaintiff-appellant Carl Thomas Sassaman joined the staff of the Dutchess County Board of Elections (the "Board") as an Elections Administrator, working under defendant-appellee David Gamache, the Republican Commissioner of the Board. Due to a printing error in October 2004, that year's election ballots had to be reprinted, and Sassaman was "assigned to oversee[ ] the budget issue regarding" this unanticipated expense. J.A. 24, 59-60. After it was determined that reprinting the ballots would require the allocation of an additional $16,000 to the Board's budget, Commissioner Gamache met with state legislators to request the funds. Gamache felt humiliated and embarrassed by the experience, and he appears to have blamed Sassaman for putting him in the position of requesting additional funds from the legislature. After communicating his dissatisfaction to Sassaman, Gamache announced that he was demoting Sassaman to Elections Specialist, effective January 1, 2005. Gamache filled Sassaman's position, Elections Administrator, with Michelle Brant, then an Elections Specialist. In effect, Sassaman and Brant traded positions at the Board.

Sassaman suspected that a romantic relationship between Brant and Gamache played a part in his demotion and Brant's promotion. According to Sassaman's deposition testimony, he confronted Brant over the telephone on December 19, 2004, and revealed his suspicions. Brant allegedly denied any romantic involvement with Gamache, and Sassaman claims that he sent Brant a note of apology.

Prior to their reversal of job positions, Sassaman and Brant enjoyed a friendly working relationship, marked by eating lunches and smoking cigarettes together. Their relationship soured in late January 2005, almost a month after Sassaman's demotion and Brant's promotion had taken effect. A telephone call placed by Sassaman to Brant on Saturday, January 29, 2008 appears to have been the turning point in their relationship. In that call, Sassaman asked Brant whether she would like to meet him out for a drink. When she declined, he suggested that they meet for coffee instead, but she declined that offer as well. Sassaman contends that Brant revealed intimate aspects of her personal life

3

to him during that telephone conversation and tried to ascertain whether he would be interested in engaging in a one-time sexual encounter. In light of these alleged revelations, Sassaman testified that he decided that "[he] was not going to remain friends with her anymore." *Id.* at 134. Shortly thereafter, Brant, who apparently had a different understanding of their telephone conversation, responded to Sassaman's changed demeanor by asking him whether he was "going to let [their] friendship go down the tubes" because she did not want to have sex with him. *Id.* at 25, 60-61. The parties dispute whether Sassaman responded that he did not have any interest in having sex with Brant.

In early March 2005, Sassaman noticed, looking over Brant's shoulder at her computer screen, that Brant had typed his name in an e-mail. The following day, Sassaman logged into Brant's computer, gained access to her e-mail account, and read the e-mail that he had observed her typing the day before.[1] Brant later discovered that her e-mail account had been breached and reported the conduct to Gamache. Gamache and Deputy Commissioner John Kennedy summoned Sassaman to discuss the incident and Sassaman admitted that he was the one to enter Brant's e-mail account. The parties dispute whether Gamache and Kennedy warned Sassaman that such conduct could not continue.

Within days, Gamache called another meeting with Sassaman to inform him that Brant had complained of Sassaman's "harassing and stalking her." *Id.* at 26, 61. Gamache told Sassaman that Brant claimed to fear Sassaman and had stayed out of the office for that reason. Sassaman was suspended from work with pay. On March 10, 2005, Brant submitted a written complaint describing Sassaman's conduct, and Gamache referred her complaint to the Dutchess County Sheriff's Office for investigation. He did not refer the matter for an internal investigation. Officers from the Sheriff's Office interviewed Brant and Sassaman. During his interview, Sassaman denied ever calling Brant at

---

[1] Sassaman contends that his actions were not unprecedented because he had previously gained access to Brant's e-mail account when she was absent from the office and he was "assigned to her desk." J.A. 61.

home or sending her notes. When pressed further, Sassaman admitted that he had both called Brant at home and sent her at least one note. Sassaman attributes the discrepancy between his initial responses and subsequent admissions to his belief that "he was being interviewed about sexual harassment and he never called or wrote a note that could reasonably be considered sexually harassing." *Id.* at 62-63. Upon completing its investigation, the Sheriff's Office concluded, in a report dated March 16, 2005, "At this time insufficient evidence exists to support any type of criminal charges." *Id.* at 51.

While the matter was being investigated by the Sheriff's Office, Sassaman met with Gamache twice. According to Sassaman, these meeting were brief and held at a local diner. Shortly thereafter, Sassaman retained counsel, who then participated in two more meetings with Gamache.

On March 21, 2005, Gamache informed Sassaman by telephone that he would be terminated unless he chose to resign. According to Sassaman's deposition testimony, Gamache defended his decision by explaining, "I really don't have any choice. Michelle [Brant] knows a lot of attorneys; I'm afraid she'll sue me. And besides you probably did what she said you did because you're male and nobody would believe you anyway." J.A. 176. In response, Sassaman resigned effective April 1, 2005.

After exhausting his administrative remedies, Sassaman brought this action in the District Court, alleging that defendant-appellees Gamache, the Dutchess County Board of Elections, and Dutchess County terminated him on the basis of sex stereotyping in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a).[2] The parties conducted discovery, and, upon the completion of

---

[2] Pursuant to 42 U.S.C. § 2000e-2(a),

It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

discovery, defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In an oral decision, the District Court granted defendants' motion, determining that Sassaman failed to identify "evidence which would permit a rational fact finder to find an inference of discrimination based on sex." Tr. 13. With respect to the statement of Gamache to Sassaman that "you probably did what she said you did because you're male," the District Court "[did not] attach any real significance to that statement, assuming it was made." *Id.* at 12. The District Court discounted the comments attributed to Gamache as "stray" and "ambigu[ous]" and incapable of "demonstrat[ing] actionable gender stereotyping," and reasoned that "such a viewpoint, even if held, would [not] necessarily taint an employment decision to respond to a harassment complaint." *Id.* at 12-13. For these reasons, the District Court concluded that Sassaman had failed to establish a *prima facie* case of sex discrimination in violation of Title VII and granted defendants' motion for summary judgment. *Id.* at 13-15.

This appeal followed.

## DISCUSSION

On appeal, Sassaman challenges the District Court's determination that he failed to present a *prima facie* case of sex discrimination in violation of Title VII. We review *de novo* the District Court's decision to grant summary judgment in favor of defendants, and, in the course of that review, we draw all permissible factual inferences in favor of Sassaman, the non-moving party. *See, e.g.*, *Holcomb v. Iona College*, 521 F.3d 130, 137 (2d Cir. 2008). To establish a *prima facie* Title VII case, a plaintiff must demonstrate that "(1) that he belonged to a protected class; (2) that he was qualified for the position he held; (3) that he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Id.* at 138. The Supreme Court has used the adjective "minimal" to describe the burden of establishing a *prima facie* case

6

of discrimination in violation of Title VII, *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993), and we have likewise held that the "plaintiff's burden of establishing a *prima facie* [Title VII] case is *de minimis*," *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001).

For the purposes of their motion for summary judgment, defendants assume that Sassaman has established the first three elements of a *prima facie* case, but they dispute whether Sassaman has established the fourth element—namely, that the circumstances gave rise to an inference of discriminatory intent. Under our precedent, an inference of discriminatory intent may be established by, *inter alia*, "the employer's . . . invidious comments about others in the employee's protected group; or . . . the sequence of events leading to the plaintiff's discharge." *Id.* at 468 (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994). Sassaman argues that he met this burden by producing evidence showing that (1) his supervisor, Gamache, made what could be construed as an invidious comment about the propensity of men to harass sexually their female colleagues; and (2) defendants failed to investigate properly the charges of sexual harassment lodged against Sassaman—charges that led directly to his forced resignation. Defendants respond that Gamache's comment on the propensity of men to engage in sexual harassment was nothing more than a "mere stray remark," and their investigation of the allegations against Sassaman was not tainted by any bias. Appellees' Br. 13, 32.

Considering first Sassaman's testimony that Gamache told him, "you probably did what [Brant] said you did because you're male," J.A. 176, we agree with Sassaman that a reasonable jury could construe this statement as an invidious sex stereotype. As the Supreme Court explained in *Price Waterhouse v. Hopkins*, "we are beyond the day when an employer could evaluate employees by assuming or insisting that they matched the stereotype associated with their group." 490 U.S. 228, 251 (1989) (superceded by statute on other grounds). In that case, the Supreme Court "discern[ed] sex stereotyping in a description of an aggressive female employee as requiring 'a course at charm school,'"

and it observed that "if an employee's flawed 'interpersonal skills' can be corrected by a soft-hued suit or a new shade of lipstick, perhaps it is the employee's sex and not her interpersonal skills that has drawn the criticism." *Id.* at 256. Construing the facts at issue in the light most favorable to Sassaman, as we must under controlling authority, the alleged sex stereotyping is more overt: Gamache appears to have defended his decision to credit Brant's allegations of sexual harassment by pointing to the propensity of men, as a group, to sexually harass women. When employment decisions are based on invidious sex stereotypes, a reasonable jury could infer the existence of discriminatory intent. *See, e.g.*, *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 120 (2d Cir. 2004) (holding that comments made about a woman's inability to combine work and motherhood constitute sex stereotyping that provides evidence of discriminatory intent).

Defendants dispute Sassaman's interpretation of Gamache's remarks. They argue that the statement, in context,[3] was "something of an aside after the termination decision had been made, and was not an expression of the reason for [Sassaman's] termination, but rather an opinion as to what others may think." Appellees' Br. 15. Whether Sassaman's interpretation or that of defendants best captures the meaning of Gamache's statement is not properly decided by this Court, or by the District Court, on a motion for summary judgment. Insofar as the comment might be ambiguous, it is "our obligation at this stage to interpret ambiguities in the evidence in the light most favorable to the plaintiff." *Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 116 (2d Cir. 2007). The choice between plausible interpretations of Gamache's remarks is a question of fact to be resolved by a jury. *See, e.g.*, *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 206 (2d Cir. 1995) ("[The defendant's] characterization [of a letter] might, if proffered through sworn testimony, raise questions of fact to be resolved at trial. It

---

[3] As noted above, the full statement, as Sassaman recalled, was: "I really don't have any choice. Michelle [Brant] knows a lot of attorneys; I'm afraid she'll sue me. And besides you probably did what she said you did because you're male and nobody would believe you anyway." J.A. 176.

8

does not, however, provide a basis for entry of judgment in [the defendant's] favor as a matter of law.").

Defendants also contend that Gamache's fear of a lawsuit brought by Brant justified his decision to pressure Sassaman to resign. They observe that "employers who disregard charges of sex-related misconduct by their employees run a considerable risk of being sanctioned for having tolerated sexual harassment." Appellees' Br. 15. We appreciate that employers who fail to address claims of sexual harassment expose themselves to civil liability. However, fear of a lawsuit does not justify an employer's reliance on sex stereotypes to resolve allegations of sexual harassment, discriminating against the accused employee in the process. To be sure, Title VII requires employers to take claims of sexual harassment seriously. *See, e.g.*, *Burlington Indus. v. Ellerth*, 524 U.S. 742, 764 (1998) ("Title VII is designed to encourage the creation of . . . effective grievance mechanisms."). It also requires that, in the course of investigating such claims, employers do not presume male employees to be "guilty until proven innocent" based on invidious sex stereotypes.

With respect to the District Court's characterization of Gamache's comment as "stray," we reiterate our observation that "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Tomassi*, 478 F.3d at 115. Here, it is reasonable to infer a discriminatory state of mind from Gamache's remark that men have a propensity to sexually harass women. In addition, Gamache made this remark during the same telephone call in which he pressured Sassaman to resign—the allegedly discriminatory act. Gamache's apparent reliance on the alleged propensity of men to engage in sexual harassment as a justification, in part, for his decision to credit Brant's allegations of sexual harassment is quite the opposite of "stray." Indeed, it tended to "show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Id.* at 116. Here, as in *Tomassi*, "[t]he remarks

9

were made by the person who decided to terminate [the plaintiff]. They could reasonably be construed, furthermore, as explaining why that decision was taken." *Id.* From this evidence, a jury could reasonably construe Gamache's statement as persuasive evidence that he pressured Sassaman to resign because of his discriminatory assumptions about the propensity of men to sexually harass their female co-workers.

The allegation that defendants made minimal—if any—efforts to verify Brant's accusations could be construed by a reasonable jury as further evidence that Sassaman's forced resignation occurred under circumstances giving rise to an inference of discriminatory intent. Sassaman argues that, although Gamache referred the matter to local authorities for a criminal investigation, "Gamache conducted no investigation himself about the serious allegations made by Brant; he did not have his Deputy investigate; and he did not ask [the Equal Employment Opportunity Officer] to investigate." Appellant's Br. 9. Defendants respond that "courts are prohibited from acting as 'super-personnel' departments [and] from questioning the reasonableness of an employer's personnel and disciplinary decisions [and] the methods by which they arrived at those decisions, in the absence of independent evidence that the process was tainted by [a] discriminatory motive." Appellees' Br. 29-30.

As a general matter, we agree with defendants that it is not the role of federal courts to review the correctness of employment decisions or the processes by which those decisions are made. *See, e.g.*, *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) ("[A] court must respect [an] employer's unfettered discretion to choose among qualified candidates." (quoting *Fischbach v. Dist. of Columbia Dept. of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996))). Nevertheless, Title VII suits often require a court or jury to consider whether an employer's response to an allegation of discrimination *itself* constitutes evidence of discrimination or liability for discrimination. When employees complain of Title VII violations, for example, employers "can be held liable . . . if [they] d[o] not fulfill [their] duty

10

to take reasonable steps to remedy the [violation]." *Torres v. Pisano*, 116 F.3d 625, 638 (2d Cir. 1997); *see also Distasio v. Perkin Elmer Corp.*, 157 F.3d 55, 65 (2d Cir. 1998) ("An employer that has knowledge of a hostile work environment has a duty to take reasonable steps to remedy it."). The failure of an employer to conduct an adequate investigation or to undertake an appropriate response can constitute evidence in support of a Title VII plaintiff's allegations. For that reason, we have observed that, in the Title VII context, "an employer must consider not only the behavior of the alleged offender, but also the response, if any, of its managers." *Malik v. Carrier Corp.*, 202 F.3d 97, 106 (2d Cir. 2000); *see also id.* ("[I]t goes without saying that an employer's obligations in this regard do not cease because the alleged harasser denies inappropriate conduct."). Likewise, when an employer considers how to respond to an employee's allegation of discrimination, it may take into account the risk that the complaining employee might file an action against the employer. An employer may not, however, rely on its alleged fear of a lawsuit as a pretext for making an employment decision that violates Title VII.

Likewise, when an employer considers how to respond to an employee's allegation of discrimination, it may take into account the risk that the complaining employee might file an action against the employer. Indeed, it is in part the threat of such action that helps ensure the rights Title VII was enacted to protect. That said, an employer may not rely on an alleged fear of a lawsuit as a reason to shortcut its investigation of harassment and to justify an employment decision adverse to the putative harasser that in itself violates Title VII. Indeed, just as the lack of investigation of a reported claim of harassment may factor into the determination of an employer's liability for discrimination against the complainant, so too may it indicate discrimination by an employer whose adverse determination against the putative harasser otherwise bears indicia of prohibited discrimination. Applying these principles to the allegations contained in Sassaman's complaint, a reasonable jury could infer from the inadequacy of defendants' investigation, if proven, that defendants relied solely on a sex

11

stereotype, and clearly not on the outcome of a reasonable investigation undertaken in response to their fear of a lawsuit, as the basis for the decision to pressure Sassaman to resign.

We emphasize that we do not hold that an arguably insufficient investigation of a complaint of sexual harassment leading to an adverse employment action against the accused is, standing alone, sufficient to support an inference of discriminatory intent. Rather, we hold only that where a plaintiff can point to evidence closely tied to the adverse employment action that could reasonably be interpreted as indicating that discrimination drove the decision, an arguably insufficient investigation may support an inference of discriminatory intent.

\* \* \*

Viewing this evidence in the light most favorable to Sassaman, as we are required to do when considering an appeal from a grant of defendants' motion for summary judgment, *see, e.g.*, *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003), we conclude that this evidence—Gamache's alleged comment on the propensity of men to engage in sexual harassment and defendants' arguable failure to investigate properly the charges of sexual harassment lodged against Sassaman—was sufficient to permit a jury to infer discriminatory intent. The District Court erred, therefore, in concluding that Sassaman had failed to set forth a *prima facie* case of sex discrimination in violation of Title VII. We nevertheless affirm the dismissal of the complaint with respect to Gamache because "individuals are not subject to liability under Title VII." *Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000)).

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the District Court with respect to defendant-appellee Gamache only, **VACATE** the judgment with respect to the other defendants, and **REMAND** the action for further proceedings consistent with this opinion.

12