*Hanks v. City of Syracuse*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 26ᵗʰ day of December, two thousand twenty-three.

PRESENT:

> JOSÉ A CABRANES,
> RICHARD J. SULLIVAN,
> ALISON J. NATHAN,
> *Circuit Judges.*

_____

BRANDON HANKS, and other similarly situated individuals,

> *Plaintiff-Appellant*,

> v.                                                                No. 22-2819

CITY OF SYRACUSE, KENTON BUCKNER, DEPUTY CHIEF RICHARD TRUDELL, DEPUTY CHIEF JOSEPH CECILE, CAPTAIN TIMOTHY GAY, COLIN HILLMAN, DEREK MCGORK, WILLIAM KITTELL, ANTHONY FIORINI, DAVID

METZ, SHAWN HAUCK, SUSAN IZZO, ANN CLARK, BRANDON FOUGNIER.

*Defendants-Appellees.*[*]

_____

| | |
|---|---|
| **For Plaintiff-Appellant:** | STEPHEN BERGSTEIN, Bergstein & Ullrich, LLP, New Paltz, NY (Charles A. Bonner, Law Offices of Bonner & Bonner, Sausalito, CA, *on the brief*). |
| **For Defendants-Appellees City of Syracuse, Kenton Buckner, Richard Trudell, Joseph Cecile, and Derek McGork:** | BRIAN J. BUTLER (Liza R. Magley, *on the brief*), Bond, Schoeneck & King, PLLC, Syracuse, NY. |
| **For Defendants-Appellees Timothy Gay, Colin Hillman, William Kittell, Anthony Fiorini, David Metz, Shawn Hauck, Susan Izzo, Ann Clark, and Brandon Fougnier:** | JOHN G. POWERS (Mary L. D'Agostino, Amanda C. Nardozza, *on the brief*), Hancock Estabrook, LLP, Syracuse, NY. |

Appeal from a judgment of the United States District Court for the Northern District of New York (Gary L. Sharpe, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

_____

[*] The Clerk of Court is directed to amend the official case caption as set forth above.

2

Police officer Brandon Hanks appeals from the September 30, 2022 judgment of the district court dismissing his claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1983 against his employer, the City of Syracuse, and various police officers (collectively, "Defendants"), who allegedly interfered with Hanks's efforts to secure a position on a prestigious task force within the Syracuse Police Department. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

In his complaint, Hanks – who is Black – alleges that he sought a temporary but coveted assignment to the Gun Violence Taskforce (the "GVTF") in hopes that it would advance his career. He further alleges that, after learning of his nomination to the task force, officers in the GVTF – all of whom were white – prepared a memorandum at their supervisor's direction that raised concerns about Hanks's candidacy. The memo detailed several incidents and social media posts where Hanks had purportedly affiliated with "gang members and convicted criminals," and referred to several videos Hanks had posted on social media that depicted him in uniform while listening to "a rap song" and using vulgar and explicit language. J. App'x at 81. The memo also indicated that these videos had

3

been forwarded to a deputy chief in the department. Upon learning of the memo, Hanks filed a notice of claim with the Equal Employment Opportunity Commission ("EEOC"), asserting that the memo was a racially motivated attempt to undermine his candidacy. Nine days later, Hanks received a written reprimand from the Chief of Police's office regarding his social media posts – a rebuke that Hanks claims was retaliation for his EEOC complaint. After the EEOC issued Hanks a right-to-sue letter, he filed suit under various federal and state statutes, alleging that the City, several of its police chiefs, and the officers involved in the GVTF memo discriminated and retaliated against him.[1]

The district court granted Defendants' motions to dismiss for failure to state a claim. Hanks timely appealed, advancing various arguments that the dismissal was in error. We review the district court's dismissal *de novo* and address Hanks's arguments in turn. *See Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015).

## I.     Discrimination Claims

Hanks first argues that the district court erred in dismissing his claims for

---

[1] Hanks also filed various state-law claims for employment discrimination, emotional distress, and defamation, over which the district court declined to exercise supplemental jurisdiction after it dismissed Hanks's federal claims.

race discrimination under Title VII and the Equal Protection Clause of the Fourteenth Amendment. To survive a motion to dismiss either claim, a plaintiff must "plausibly allege that (1) the employer took adverse action against him, and (2) his race . . . was a motivating factor in the employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015); *see also id.* at 88 (explaining that equal protection discrimination claims under Section 1983 require at least these elements of a Title VII claim). To establish the second prong – an inference of discriminatory intent – a plaintiff can point to circumstances such as "the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (internal quotation marks omitted).

Hanks's claims fail for two reasons. First, Hanks does not plausibly allege that the memo reflected discriminatory intent. He principally relies on a "stereotype" theory of discrimination, *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 119 (2d Cir. 2004), contending that the memo invoked racist stereotypes when it raised concerns about Hanks's affiliations with gang members

5

and his social media posts featuring explicit language and rap music.[2]   But when courts find discriminatory intent based on stereotyped remarks, it is generally because those remarks make invidious generalizations about the protected class. *See, e.g.*, *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 200 (2d Cir. 2017) (finding plausible discriminatory intent where a supervisor explicitly stated that an openly gay plaintiff "must have AIDS" because he was "effeminate and gay" (alterations omitted)); *Sassaman v. Gamache*, 566 F.3d 307, 312 (2d Cir. 2009) (concluding that "a reasonable jury could construe [the statement 'you probably did what the accuser said you did because you're male'] as an invidious sex stereotype").

Here, the GVTF memo did not rely on such "ethnically degrading" or "invidious" generalizations.  *Littlejohn*, 795 F.3d at 312; *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 44 (2d Cir. 2000) (rejecting discrimination claim alleging that words like "nice" and "nurturing" reflected gender stereotypes); *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) (using context to conclude that the phrase "up in his face" did not "plausibly suggest . . . a racial sub-text").  Rather, the memo documented specific incidents in which Hanks was

---

[2] Hanks attached the GVTF memo to his complaint and it is properly part of the record before us.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

*individually* involved that, if believed, could reasonably lead the police department to question his suitability for membership in a gang task force. For instance, the memo expressed concern that Hanks was tagged in a known gang member's post asking Hanks to "[c]ome pick up [his shirt]" and that Hanks's social media accounts featured other posts where "gang members were . . . asking [him] questions about police[-]related topics." J. App'x at 82. It also documented incidents where Hanks was allegedly present at the scene of a shooting while off-duty and was in a car that was pulled over along with suspected gang members who were drinking. *See id.* The memo further detailed several other social media posts that potentially violated "the department's code of conduct," *id*, including a video where Hanks "identified himself as a police officer" and used explicit language, as well as other clips – for which Hanks was later disciplined – that depicted "Hanks in uniform" with an explicit "rap song" playing in the background, *id.* at 81. Because these complaints were neutral and individual – not invidious and general – critiques of Hanks's "performance," *Littlejohn*, 795 F.3d at 312, we cannot say that they plausibly support an inference of discrimination by stereotype, *Christiansen*, 852 F.3d at 201.[3]

---

[3] Nor does Hanks allege other facts that could create an inference of discrimination. That he is

But even if it could be argued that Hanks pleaded sufficient facts to establish discriminatory intent on the part of the memo writers, his claims would still fail because he did not plausibly allege that he suffered an adverse employment action *because of* the memo. *Vega*, 801 F.3d at 85 (stressing that a causal connection is required). Indeed, Hanks's complaint never asserts whether, when, or why he was denied the GVTF assignment, much less that supervisors did so because of the memo. Instead, Hanks makes various accusations that the GVTF officers and its supervisors "sought to derail his promotion," J. App'x at 20, and "conspired to deprive [Hanks] of his rightful advancement within the Police Department," *id.* at 32; *see also id.* at 19–20, 25. But while Hanks conclusorily asserts that his promotion was "prevent[ed]" or "denied" as a result of the memo, *id.* at 19, 37, he fails to indicate when that happened, who was involved in the purported denial, and whether the memo played any role in the decision. Without allegations tying the memo to the denial, Hanks cannot plausibly claim that the allegedly discriminatory remarks in the memo played a "motivating factor" in the adverse

---

of a different race than the GVTF officers does not lead to such an inference. *See Yusuf v. Vassar Coll.*, 35 F.3d 709, 714 (2d Cir. 1994) (rejecting a discrimination claim under Section 1981 that relied only on a difference in race). And Hanks also fails to point to any other "similarly situated" person who was treated more favorably than he was. *Littlejohn*, 795 F.3d at 312. Though Hanks's complaint asserts that such persons exist, it fails to specify who they might be or how they were treated differently. *See* J. App'x at 32.

employment action. *Vega*, 801 F.3d at 85 (internal quotation marks omitted).

## II. Hostile Work Environment Claims

Hanks next argues that the district court erred in dismissing his hostile work environment claims under Title VII and the Fourteenth Amendment. A plaintiff bringing such claims "must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the [plaintiff]'s employment and create an abusive working environment." *Littlejohn*, 795 F.3d at 320–21 (internal quotation marks omitted). Importantly, "[t]he incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* at 321 (internal quotation marks omitted).

Hanks has failed to allege such a hostile work environment here. For starters, the GVTF memo does not create a plausible inference of discriminatory intent for the reasons explained above. Similarly, Hanks's generalized allegations of discrimination within the department, such as his characterization of the police force's "long-standing discriminatory employment policies" and the "pressur[e]" it put on Black officers "to engage in excessive force against African American citizens," J. App'x at 33, 41, are wholly "conclusory" and woefully short

9

on details.  *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).   Finally, even if Deputy Chief Trudell used racial slurs in the past, those incidents occurred at least four years before Hanks even joined the force.   Hanks does not allege that Trudell ever used such language again, much less in connection with Hanks's employment.   *See id.* ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity." (internal quotation marks omitted)).

## III.   Retaliation Claims

Hanks also urges us to revive his retaliation claims brought under Title VII, the First Amendment, and the Fourteenth Amendment.   To state a claim for retaliation, a plaintiff "must plausibly allege that:   (1) defendants discriminated – or took an adverse employment action – against him, (2) because he has opposed any unlawful employment practice."   *Vega*, 801 F.3d at 90 (internal quotation marks omitted).   As noted above, Hanks accuses Defendants of retaliating against him when they issued a written reprimand for his social media infractions nine days after he filed his EEOC complaint.   But even if the temporal proximity of the reprimand to the EEOC complaint is enough to support an inference of causation, Hanks has failed to show that the written reprimand here constituted an adverse

10

employment action.

"Title VII does not protect an employee from 'all retaliation,' but only 'retaliation that produces an injury or harm.'" *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 569 (2d Cir. 2011) (quoting *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006)). This is especially true when the reprimand is merely a routine application of an established disciplinary policy. *See Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 25–26 (2d Cir. 2014).

Here, Hanks alleges only that he received a written reprimand that admonished him for not complying with the police department's codified policy against social media posts that contain explicit language. *See* J. App'x at 167 (issuing a "reprimand" under "Departmental policy number 1030.5.1 (H1), 'Prohibited Speech, Expression and Conduct' in social media"). The letter imposed no tangible consequences on Hanks; if anything, it contemplated that Hanks would not face any discipline unless he continued to violate the policy in the "future." *Id.*; *see also Starzynski v. Stanley Black & Decker, Inc.*, No. 21-3040, 2022 WL 17825920, at *1 (2d Cir. Dec. 21, 2022) (explaining that a single infraction cannot qualify as an adverse employment action if the infraction itself did not alter working conditions). Because Hanks cannot point to any injury or harm that

flowed from the reprimand, he cannot invoke it in support of his retaliation claim.

## IV.   *Monell* **Claim**

Finally, Hanks contends that the district court erred in dismissing his *Monell* claim against the City.   Under *Monell v. Department of Social Services of New York*, 436 U.S. 658 (1978), a municipality can face suit under section 1983 only if its "failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."   *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).   But our caselaw is clear that there can be no *Monell* liability where there has not been an underlying violation.   As discussed above, Hanks fails to state any independent constitutional violation, so he necessarily fails to state a claim under *Monell* as well.   *See id.* ("Because the district court properly found no underlying constitutional violation, its decision not to address the municipal defendants' liability under *Monell* was entirely correct.").   We therefore find that the district court did not err in dismissing Hanks's *Monell* claim.

\*     \*     \*

We have considered Hanks's remaining arguments and find them to be without merit.   Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12